ROBINSON et al. v. NORTH ARKANSAS
PRINTING CO., Inc.

Civil Action No. 193.

District Court, W. D. Arkansas,
Harrison Division.

June 27, 1947.

W. F. Reeves, of Marshall, Ark., for plaintiff.

Roy L. Baker, Jr., and Willis & Walker, all of Harrison, Ark., for defendant.

JOHN E. MILLER, District Judge.

Statement.

This cause was tried to the court on April 9, 1947, and on the conclusion of the testimony the court requested the attorneys to prepare and file written briefs and arguments in support of their respective contentions as to the facts established by the testimony and the law applicable thereto. The briefs and arguments have been filed, and the court after having considered the ore tenus testimony, the exhibits thereto, the stipulations of the parties, the pleadings and written briefs and arguments, now makes and files its findings of fact and conclusions of law, separately stated.

Findings of Fact.

1. The plaintiffs are each citizens and residents of the Western District of Arkansas, Harrison Division. The defendant is a corporation, organized and existing under the laws of the State of Arkansas with its principal office and place of business in the city of Harrison in said District and Division.

2. The defendant at all times material herein was engaged in the publication of a weekly newspaper, Boone County Headlight, with a circulation of less than 3000, the major portion of which was within the county where the paper was published. The chief business of the defendant was the publication of the newspaper, but it maintained and operated as an adjunct to such business a job printing department from which the larger percentage of its income was received, but the major portion of the time of all employees was consumed in printing and publishing the newspaper.

The defendant purchased most of its supplies used in printing the paper and in it's job department from wholesale dealers at Little Rock, Arkansas and Springfield, Missouri. The supplies were ordered as and when required and were shipped to the defendant's place of business at Harrison, Arkansas, where they were stored until used either in the printing of the newspaper or in filling orders of customers for special printing jobs.

3. All of the job printing that was done during the time the plaintiffs were employed by the defendant was upon orders of customers living in Arkansas and was delivered to such customers in Arkansas. A substantial portion of such printing, such as stationery, letter heads, envelopes, statements, bills, reports and various forms used by businessmen and railroads, were used by such customers in the transaction of their individual business, a portion of which was with persons and firms living in states

other than Arkansas. The job printing done for the M. & A. Ry. Co. was upon orders placed by the railway company through its general offices at Harrison, Arkansas and was used in carrying on the work of the company in the operation of its line of railroad extending from Joplin, Missouri to Helena, Arkansas. All of such work was delivered to the general offices at Harrison, Arkansas, and some of the supplies were forwarded to and used by the station agents at various towns and depots along the line of the railway.

4. The plaintiff, Mrs. Iva Robinson was general foreman in the back office or the printing rooms of the defendant, and was engaged generally in typesetting, form making, operation of presses and such other manual labor as is usually done in an establishment printing and publishing a weekly newspaper and incidental job work.

She worked each week from August 4, 1946, to December 1, 1946, an average of sixty hours and was paid wages of $45 per week. Her regular rate of pay per hour was 66⅔ cents. She was not paid any overtime compensation, and if entitled to such compensation the amount due would be $6.66⅔ per week for seventeen weeks or $113.13⅓.

5. The plaintiff, Miss Allegra Mahler, was employed as bookkeeper, but a substantial portion of her working time was consumed by manual labor in the printing of the newspaper and the job department where she engaged in the usual work of operating presses, arranging material for printing, wrapping and delivering the completed work of the presses, and in general, any and all work required in the printing and publication of a weekly newspaper and in the job department.

She worked the two weeks ending June 16 and 23, 1946, a total of 60 hours each at a weekly wage of $17.50. Her regular rate of pay per hour for such time was 29⅙ cents.

She worked each week from June 23 to December 7, 1946 an average of 60 hours at a weekly wage of $22.50. Her regular rate of pay per hour was 37½ cents.

She was not paid minimum wages for said time, nor was she paid any overtime compensation. If entitled to recover minimum wages and overtime compensation the amount due for the first period would be $13 minimum wages and $8 overtime compensation. For the second period the amount due would be $33 minimum wages and $88 overtime compensation or a total of $46 minimum wages and $96 overtime compensation, making a grand total of $142.

### Discussion

1. In defining the coverage of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., Congress saw fit to make certain specific exemptions. Among these is the one appearing in clause (8) of section 213 (a), Title 29 U.S.C.A.: "any employee employed in connection with the publication of any weekly or semi-weekly newspaper with a circulation of less than three thousand the major part of which circulation is within the county where printed and published."

No doubt prevails in this case but that the plaintiffs were employees employed in connection with the publication of a weekly newspaper with a circulation of less than three thousand the major part of which was within the county where printed and published. The issue here presented is whether the fact that the plaintiffs also worked on job printing removes them from the exempted category. No authority, direct or analogous has been discovered in the reported cases.

Common sense is all that is needed to define the legislative intent in this instance. Small county newspapers are today, and historically have been, the unrestrained voice of the people. They are the last outlet of the raucous voice of grass-root individualism disturbing the polished purr of purchased or pressured opinion. They have avoided absorption because they are unprofitable. They have been manned principally by individuals whose blood was tinted by the printer's ink, not by the miser's gold. The part they play in rural community life is well documented in the literature of our country.

Congress was well acquainted with the fact that the vast majority of newspapers in this category are able to continue publishing only because of the revenue from

job printing undertaken between press-times for the newspaper.

Statistics show that 74.9% of the dailies having circulation of less than 3000 do job printing work.[1] The proportion for weekly and semi-weekly newspapers is undoubtedly higher.

■ It is also a matter of common knowledge that the functions of newspaper publishing and job printing are so thoroughly intermingled in these small establishments as to be for practical purposes indistinguishable. As in the present case which is fairly typical, the same employees publish the paper and fill job orders. The work is to a large extent done on and with the same machines.

It is not reasonable to assume that Congress wrote into the Act a specific exemption for employees of small county newspapers, yet intended to exempt less than 25% of the persons so employed. The scope of the exemption must be defined in the light of the facts. (If employees who divide their time between job and newspaper printing are not within the scope of the exemption, then it is virtually meaningless.) The obvious purpose of the clause is to exempt all employees who are actually and in good faith employed for the purpose of publishing a small newspaper, even though they may also do job printing as an incident to financing the newspaper.

This construction of the exemption is borne out by the language employed by Congress. To be exempted it is only required that the employee be employed "in connection with" the publication of any weekly or semi-weekly newspaper. In the light of the well known facts of the trade, how easy it would have been to have said "employed exclusively in the publication," etc., if that meaning had been intended.

The fact in this case that more revenue was derived from job printing than from newspaper publishing does not affect the construction of the exemption. There may be instances in which the job printing phase of the business would take on an independent character and lose the protective coloration of newspaper publishing. Certainly the courts will not permit the clause to be used as a subterfuge to evade the law. But when, as in this case, the typical picture of a small county newspaper sustaining itself on its incidental job printing is presented, the court has no alternative but to give effect to the express direction of the lawmaking branch.

It follows, therefore, that the plaintiffs were employees exempted by clause (8) of section 213(a) of Title 29, U.S.C.A., hence are not entitled to the benefits of the Act.

2. If the plaintiffs were not in an exempted class the question whether the plaintiffs were engaged in the "production of goods for commerce" would arise, but in view of the conclusion of the court on the first question presented and discussed, it is not necessary to determine whether they were producing goods for commerce during the time they were working in the job printing department.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter of the cause. 29 U.S.C.A. § 216(b).

2. The complaint should be treated as amended to conform to the proof and the stipulations of the parties as to the claims of the plaintiff, Miss Allegra Mahler. Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ 3. The plaintiffs were employees exempted by clause (8) of Sec. 213(a), Title 29 U.S.C.A., and are not entitled to the benefits of the Fair Labor Standards Act of 1938.

4. Judgment will be entered in accordance with the above, dismissing the complaint and adjudging the costs against the plaintiffs. The exceptions of plaintiffs will be noted.

---

[1] In The Matter Of The Recommendation of Industry Committee No. 49 for Minimum Wage in the Printing and Publishing and Allied Graphic Arts Industry, Findings and Opinion of the Administrator, May, 1943, U. S. Dept. of Labor, and Division.