Henry Epstein, J.
This action was brought for judgment declaring the status, under the emergency rent laws of the State of New York and more particularly under section 55 of the State Bent and Eviction Begulations promulgated thereunder, of certain apartments in 55 Central Park West and for an injunction restraining the owner of the property and others from circulating a notice that the co-operative plan issued and presented on March 1, 1960 is effective unless and until 35% of the tenants of controlled housing accommodations, whose names *318 and apartment numbers are listed in Schedule A annexed to the complaint, have subscribed to the plan and agreed to purchase the stock allotted to their respective apartments.
The property in question is a large block-front, luxury-type dwelling containing approximately 116 separate apartments. Some of the apartments are professional offices and one is occupied by the superintendent.
The defendant Fifty-Five Corporation was formed under the Stock Corporation Law of the State of New York in April, 1940. When it was formed it acquired title to the land and building at 55 Central Park West. In 1945, a “cooperative venture” or “ share Ownership Plan” was organized under the Federal regulations then in effect. The plan offered 100% of all the issued stock to persons who would become lessees of not more than 30% of the apartments. Only two tenants purchased the stock and acquired proprietary leases to their apartments. The remaining shares were sold to 26 other individuals who were nonresidents of the building but who subsequently obtained possession pursuant to Federal rent control.
In the intervening years up to 1957 additional apartments were sold until at the time of commencement of this action 39 apartments were owned by 37 individuals who owned all of the issued stock of Fifty-Five Corporation.
On March 1, 1960, Fifty-Five Corporation sold the land and building to 55 C. P. W. Owners, Inc. The contract of sale specifically described 55 C. P. W. Owners, Inc., as a co-operative corporation and the stockholders remained the same. On the same date as the contract of sale, the new co-operative corporation presented a plan of co-operative organization to the tenants in the building. The plan was not to be effective unless by September 1, 1960 stock in the corporation had been sold in good faith, without fraud or duress, and with no discriminatory repurchase agreements or other discriminatory inducement, to at least 35% of the tenants in occupancy of controlled housing accommodations at the time of the presentation of the plan. There were very few purchases under this new plan and so on May 1, 1960 the owners announced that the 39 persons who were owner occupants of apartments under the old plan and who comprised the holders of all the issued stock plus the few new purchasers constituted the 35% required under the rent regulations and therefore the plan would be declared effective. If within the next 30 days the remaining controlled tenants did not purchase stock, their apartments would be made available to strangers and in the event of a sale, they would be evicted.
*319 A temporary injunction by this court (G-reenbebg, J.) prevented the sale pending the trial of this action.
Upon request of the State Bent Administrator this court granted permission to him to be heard and file a brief amicus curies. The plaintiffs — controlled tenants (not stockholders) — allege that the plan by this co-operative corporation cannot be declared effective because the holders of the proprietary leases under Fifty-Five Corporation are not tenants in occupancy of controlled housing accommodations; that the alleged affirmative defenses are insufficient, and finally the constitutionality of the regulations and law cannot be collaterally attacked. The State Bent Administrator takes substantially the same position as the tenant plaintiffs.
The defendants deny that the owner occupants are not to be considered tenants in occupancy of controlled housing accommodations in ascertaining the 35% requirement of section 55 (subd. 3, par. [c], cl. [i])„ They likewise deny that the plan of March 1, 1960 provides for the exchange by owner occupants of their stock in Fifty-Five Corporation for stock in 55 C. P. W. Owners, Inc., or that they proposed to issue a notice on May 1, 1960, declaring the co-operative plan effective. The amended answer raises as an affirmative defense that section 55 (subd. 3, par. [c], cl. [i]) of the State Bent and Eviction Regulations is unnecessary, unreasonable, etc.; that the regulation was beyond the powers vested in the Administrator; that the enactment of the regulation was an unlawful delegation of power by the Legislature; that a judgment for plaintiff would deprive defendants of their property without due process of law.
The enactment of section 55 (subd. 3, par. [c], cl. [i]) of the State Bent and Eviction Regulations was a valid exercise of the power granted to the Temporary State Housing Rent Commission pursuant to section 4 (subd. 4, par. [a]) of the State Residential Rent Law (L. 1946, ch. 274, as amd.). The Legislature has delegated to the Rent Administrator the authority to determine in specific accommodation whether or not the premises are subject to rent control. The regulations do not deprive defendants of all right to form a co-operative. The fact that defendant’s Share Ownership Plan was formulated 16 years ago without contemplating the “stringent” requirements of subdivision 3 of section 55 does not constitute a deprivation of property without due process of law and a denial of equal protection of law.
The validity of the power of the Administrator to promulgate regulations is too well settled to require further discussion. *320 The particular facts of this case clearly demonstrate the need for such regulatory power under the formula set up by the Legislature.
Subdivision 6 of section 2 of the State Rent and Eviction Regulations defines a landlord as “ An owner, lessor, sublessor, assignee, proprietary lessee of a housing accommodation in a structure or premises owned by a cooperative corporation or association or other person receiving or entitled to receive rent for the use or occupancy of any housing accommodations or an agent of any of the foregoing.” The regulations (§ 2, subd. 2) define a housing accommodation as a “ building or structure * * * or any part thereof ’ ’ occupied as a residence or home.
The 39 apartments in question in this proceeding were never deemed by the parties before the litigation to be controlled apartments after the purchase of the stock by tenants' of 55 G. P. W. Exhibits 13 and 15 consisting of the work sheets of the Rent Commission indicate that the said apartments are u not controlled.” The owners of the stock in defendant corporation cannot be deemed landlords for one purpose and tenants for another. The record in this case contains at least one instance where a stockholder and holder of a proprietary lease sought and obtained a certificate of eviction for the apartment he had purchased. In 1957 and again in 1959, the defendant Fifty-Five Corporation applied for an increase of maximum rent and in each case they attached riders indicating that the apartments here considered are not controlled.
The State Rent and Eviction Regulations (§ 55, subd. 3, par. [c], cl. [i]) provide as follows: “ On the date the cooperative plan was first presented to the tenants, each tenant in occupancy of a controlled housing accommodation in the premises was furnished with a copy of the plan and notified in writing that he had the exclusive right for a period of 60 days to purchase the stock allocated to his housing accommodation at the specified price, and that the plan would not be declared effective, unless on or before December 31, 1955 or within 6 months from the time the cooperative plan was presented to such tenants, whichever date is later, stock in the cooperative had been sold in good faith without fraud or duress, and with no discriminatory repurchase agreement or other discriminatory inducement, to at least 35 per cent of the tenants in occupancy of controlled housing accommodations at the time of the presentation of the plan. Housing accommodations vacant on the date the plan is presented or subsequently vacated, shall not be included in the computation of the 35 per cent requirement except when the vacant housing accommodation is purchased for personal *321 occupancy by a tenant of a controlled housing accommodation. ’ ’ (Emphasis added.)
The holders of the proprietary leases are not controlled tenants and as such cannot be included in the 35% necessary to make this co-operative plan effective.
Defendants have cited the case of Greenberg v. Colonial Studios (279 App. Div. 555) as one precisely in point with the case at bar. Special Term (105 N. Y. S. 2d 494) held that the tenant stockholders were not tenants within the meaning of the rent control law. The Appellate Division reversed with the following memorandum: “ We think the appellants should be treated as tenants in the circumstances presented in this case and afforded the protection of the rent law.” It is clear that the Appellate Division was not proposing that proprietary lessees are to be considered as tenants but they specifically limited their decision to the peculiar fact of the case before them.
Judgment may be entered declaring that the persons listed in Schedule “ B ” annexed to the complaint are not tenants of controlled housing accommodations within the meaning and intent of the housing rent regulations; that no notice declaring the co-operative plan in effect shall be valid unless and until 35% of the tenants occupying controlled housing accommodations, listed in Schedule “ A ” annexed to the complaint, agree to subscribe to and purchase the shares of stock allotted to their respective apartments; and the defendants are restrained and enjoined from circulating any notice declaring that the plan presented on March 1,1960 is effective, until 35% of the tenants of controlled housing accommodations have subscribed to the plan.