**Melvin Jack TURNER, Appellant,**

v.

**Julia L. BOSTON, Trustee in Bankruptcy, and Valley Credit Service, Inc., Appellees.**

**No. 22128.**

United States Court of Appeals
Ninth Circuit.

April 23, 1968.

Donald D. McKown, (argued), Hillsboro, Or., for appellant.

Julia L. Boston, (argued), Portland, Or., in pro. per. Kenneth A. Holmes, Salem, Or., for appellees.

Before JERTBERG and BROWNING, Circuit Judges, and BOLDT, District Judge.

BROWNING, Circuit Judge:

Under the mistaken impression that more than six years had elapsed since the filing of his previous petition, appellant filed a second bankruptcy petition five years, eight months and three weeks after filing his first petition—one hundred days before the expiration of the six-year period provided by 11 U.S.C. § 32(c) (5) (1964).[1] There were then no suits pending against him, and no execution or attachments had been levied against his property. There is no contention that the early filing was anything but an honest mistake. He was denied a discharge solely because the petition was prematurely filed.

He filed the present petition three years later, and thus nearly nine years after being discharged on his first petition. The obligations listed in the present petition consist of unsecured claims totaling $12,436.11, a claim secured by property valued at $90.00 in excess of the obligation, and $1,181.00 in unpaid taxes. $12,067.42 of the unsecured obligations were listed in appellant's premature petition—and were held below to be forever nondischargeable. Appellant lists only $368.64 in new unsecured obligations incurred in the three years after his premature petition, a disputed bill of $151.05 for a vacuum cleaner, and a

1. 11 U.S.C. § 32(c) provides in pertinent part:

The court shall grant the discharge unless satisfied that the bankrupt has * * * (5) in a proceeding under this title commenced within six years prior to the date of the filing of the petition in bankruptcy * * * been granted a discharge * * *.

$101.64 judgment obtained by "Investigators Inc."[2]

Appellant is employed as a well driller, earning about $3,600 a year. The origin of the $12,067.42 in old debts is suggested by a notation on the statement of affairs attached to his petition that he engaged in an independent rock hauling business from 1959 to 1963—the four-year period preceding the filing of his premature petition.

Relying upon Chopnick v. Tokatyan, 128 F.2d 521 (2d Cir. 1942), the district court held that these debts might never be discharged because of the compulsion of the doctrine of *res judicata* and because of a fear that unless debtors are penalized for filing prematurely they will deliberately indulge in that practice to to obtain temporary relief from pressing creditors. In re Turner's Estate, 268 F. Supp. 918 (D.Ore.1967).

We are not concerned with defining and applying the rules relating to *res judicata*—a doctrine created by courts to give finality to judgments disposing of particular controversies between parties and their privies. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

Our task is the interpretation of specific federal legislation enacted by Congress in the exercise of a broad and plenary power conferred by Article I, Section 8, Clause 4 of the Constitution, to serve vital and quite different public purposes—the "equitable distribution of a debtor's estate, rehabilitation of the debtor, and protection of the credit structure against anything materially contributing toward its impairment." 1 Collier, Bankruptcy ¶ 0.03 at 6 (1967).

Although opinions dealing with the effect of the disposition of prior petitions upon the dischargeability of debts often employ the verbiage of *res judicata,* the decisions ultimately rest upon a determination of the meaning of the Act. See, e. g., Freshman v. Atkins, 269 U.S. 121, 124, 46 S.Ct. 41, 70 L.Ed. 193 (1926);

Perlman v. 322 West Seventy-Second Street Co., 127 F.2d 716, 717–718 (2d Cir. 1942). In Holmes v. Davidson, 84 F.2d 111, 113 (9th Cir. 1936), we expressly declined to be limited by res judicata principles in reaching the result which we thought was required to effectuate the Act's purposes.

The question in the present case is simply whether Congress intended that denial of discharge on a premature petition should permanently foreclose discharge of the listed debts. If Congress did not, but instead intended only to delay discharge for the statutory six-year period, that legislative purpose cannot be defeated by a general judicial doctrine of finality. Kalb v. Feuerstein, 308 U.S. 433, 438–439, 444, 60 S.Ct. 343, 84 L.Ed. 370 (1940). The grant or denial of a discharge involves the exercise of equitable jurisdiction (cf. Hull v. Powell, 309 F.2d 3, 5 (9th Cir. 1962)) in the effectuation of the policy of the Bankruptcy Act. As the Supreme Court said in a similar situation, "the determination of that policy is not 'at the mercy' of the parties * * * nor dependent on the usual rules governing the settlement of private litigation." Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, 670, 64 S.Ct. 268, 273, 88 L.Ed. 376 (1944). Cf. Lawlor v. National Screen Service, 349 U.S. 322, 329, 75 S. Ct. 865, 99 L.Ed. 1122 (1958).

Furthermore, if Congress intended by section 32(c) (5) to delay but not foreclose the discharge of the listed debts, all that was or could have been decided by a refusal to discharge in accordance with section 32(c) (5) was that the debts were not then dischargeable because the six-year period had not elapsed. The application of the doctrine of *res judicata* in its fullest vigor to all that was or could have been decided would not affect the issue of the dischargeability of the debts on a petition filed after the six-year moratorium had passed. On any analysis, then, the question presented is the proper construction of section 32(c) (5).

---

**2.** In the year preceding the filing of the present petition appellant repaid loans in the amount of $2,396.00.

Turning to that question, it should first be noted that the words of 11 U.S.C. § 32(c) (5), quoted in note 1, appear to constitute no more than a simple direction that a discharge is not to be granted if the bankrupt has been discharged on a petition filed within the preceding six years. The language of clause (5) is not directed against the premature filing of the petition, but at the too early grant of a discharge. Clause (5) applies only when the bankrupt "has been granted a discharge" on the prior petition. As we have recently said, "The Bankruptcy Act does not permit one to rid himself of his debts by going through bankruptcy every time he finds himself unable to pay his debts." In re Mayorga, 355 F.2d 89 (9th Cir. 1966). "The quoted section thus prescribes at least a six year interval * * * between * * * discharges in bankruptcy * * *." Id. at 90.

Professor Moore has stated, "The purpose of clause (5) is obviously to prevent a too frequent use of the Bankruptcy Act as a means of avoiding honest debt." 1 Collier, Bankruptcy ¶ 14.53 at 1422 (1967). The legislative materials support this judgment.

The proponents of clause (5) argued that "no person should have the benefit of the act * * * oftener than once in six years" (House Report 1698, 57th Cong., 1st Sess. 2 (1902)); and that clause (5) "will put an end to the possibility of debtors going through bankruptcy every month. The new period, six years, is an average arrived at from the suggestions received." Id. at 6.[3] See also 35 Cong. Rec., 57th Cong., 1st Sess. 6940, 6941 (1902). The opponents of clause (5) interpreted it in the same way: "Even if we were to concede, though we do not, that there ought to be a limit to the right of the debtor to discharge, we affirm that one discharge in six years is carrying the restriction too far, especially in case a man is made an involuntary bankrupt and shows that he is entitled, under the narrow provisions of this law, to a discharge. In all cases we believe that the bankrupt, voluntary and involuntary, ought to be discharged as often as he makes the showing required by the act. Most crimes against the United States are barred by statutes of limitation of less than six years. If debtors are to be forgiven at all there is no reason for being less generous to them than to

---

3. As the reference at page 6 of the House Report indicates, the proposal probably originated with the National Association of Referees in Bankruptcy. The Association intended the proposed amendment to have the effect suggested in the language quoted from the House Report. The paragraph of the Association's recommendations relevant to clause (5) reads as follows:

f. *A previous discharge in bankruptcy:* The English Act denies a discharge to a bankrupt who has been previously discharged. The Law of 1867, § 30, denied it to a voluntary bankrupt, unless his estate would pay seventy per cent., except on consent of three-fourths of his creditors who had proved their claims. There are recorded instances of second discharges to the same individual under the present law already, though usually the second discharge has been asked for merely to cut off creditors who were accidentally omitted from the first schedules. At the same time, it is entirely possible for a debtor to secure a dis-

charge in bankruptcy several times a year, a scandal which should not be permitted. We do not favor either the English doctrine of once for all, nor yet that in force under the Law of 1867, requiring a certain percentage, or the consent of creditors. The present policy being against discretion, the opposite of it, a rigid time limit, seems the best solution. Some referees were for making that limit one year, others for making it ten. As a fair compromise of all the opinions sent in we have suggested that a second discharge be refused unless the previous discharge was granted more than six years before. The clause is, therefore, the following:

§ 14-b, * * * or (7) *been granted a discharge in bankruptcy within six years.*

Report of The Executive Committee of the National Association of Referees in Bankruptcy Concerning Proposed Amendment to the Bankruptcy Act of 1898, p. 18 (March 1900).

criminals." House Report 1698, supra at 5. See also 35 Cong. Rec., supra at 6945, 6947, 6948.

Thus the issue was whether a debtor should be allowed a discharge more often than once in six years. Nowhere in committee reports or in debate did the proponents suggest that clause (5) would bar discharge of the listed debts not only for six years but forever. Nor is any intimation to that effect found in the arguments of the opponents; and the vigor and specificity of the latter preclude any possibility that such a substantial extension of the burden imposed upon debtors would have passed without comment.

The congressional purpose of avoiding too frequent use of the Act to avoid debt is completely satisfied by denying discharge on any petition filed within the six-year period. It contributes nothing to this purpose to deny discharge of the prematurely listed debts on a subsequent petition filed after the six-year period has elapsed.

Moreover, as this case demonstrates, to render all debts prematurely listed by an innocent debtor forever bankruptcy-proof defeats the Bankruptcy Act's purpose "to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunates.' Williams v. U.S. Fidelity & Guaranty Co., 236 U.S. 549, 554–555, [35 S.Ct. 289, 290, 59 L.Ed. 713] [1915]. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Society is injured by forever saddling the debtor with undischargeable debts, for the discharge denied might have provided the debtor "with the incentive to use his skills and talents, and thereby contribute to society even after financial disaster." 1 Collier, supra, ¶ 14.01 at 1260. See Shelby v. Texas Improvement Loan Co., 280 F.2d 349, 355 (5th Cir. 1960).

"[I]t is pertinent to observe that statutory provisions regulating discharges are remedial in nature; they should be construed liberally with the purpose of carrying into effect the legislative intent, and that the statutory grounds for opposing a discharge should not be extended by construction." Gross v. Fidelity & Deposit Co. of Maryland, 302 F.2d 338, 340 (8th Cir. 1962), and authorities there cited; Bockus v. Yuen, 29 F.2d 205, 206 (9th Cir. 1928). To construe section 32(c) (5) as barring discharge of prematurely listed debts after the six-year interval has passed would frustrate the remedial purposes of the Act, would interpret the provision harshly, in a manner unnecessary to accomplish its purpose, and would by construction extend the clause (5) bar to discharge far beyond the limits expressed in the language of the provision itself.

Judge Sibley said in Prudential Loan & Finance Co. v. Robarts, 52 F.2d 918, 919 (5th Cir. 1931), "The other grounds [for denying discharge] all involve reprehensible conduct of the bankrupt which Congress intended to punish by a perpetual refusal to discharge him from the claims of his then creditors. The purpose in adding the ground relating to a prior discharge within six years was not to punish, but only to postpone a second discharge for that period of time." The effect of the district court's interpretation of section 32(c) (5) is to punish the debtor severely though he may be wholly innocent, and, indeed, though he may have taken no action at all.

This is so because section 32(c) (5) necessarily applies to involuntary as well as voluntary petitions. In either case a discharge cannot be granted if the petition is filed within the six-year period. Thus, under the district court's interpretation of the statute, a creditor could force an insolvent debtor into bankruptcy within the six-year period for an act of

bankruptcy not barring discharge, require a marshaling and a distribution of the debtor's assets, and, at the same time, render the balance due the creditor forever bankruptcy-proof. "A result of this sort does not measure up to the equitable purposes of the bankruptcy law." Oglebay, Some Developments in Bankruptcy Law, 18 Ref.J. 9, 11 (1943). See also Prudential Loan & Finance Co. v. Robarts, 52 F.2d at 919–920.

Such a result cannot be justified by the fear that debtors will deliberately file prematurely to stay garnishments. There is no evidence that the fear has substance. On the contrary, although the rule which occasions the alarm has been the announced law of the Sixth Circuit for thirty-seven years, and has been rejected in only a single circuit (Chopnick v. Tokatyan, 128 F.2d 521 (2d Cir. 1942)), nowhere in the voluminous literature of bankruptcy is there the slightest intimation that the postulated flood of prematurely filed petitions has any existence in fact.

Even if the problem were real, section 32(c) (5) would surely not be an intended, or appropriate, means to meet it. As noted above, clause (5) was directed against too frequent discharges, not against too frequent petitions, and therefore applies only when a discharge has been *granted* on the first petition. Precisely the same potential for abuse from repetitive petitions exists when a discharge is denied on the first petition. In this situation, however, the penalty would not apply—debts listed in subsequent premature petitions would remain dischargeable. See, e. g., In re De Cillis, 83 F.Supp. 802 (D.Mass.1949). The proposed penalty would not only fail to apply where abuse does exist; it would apply in all its rigor where abuse does not exist —as in this case, for example, where the premature filing was innocent, no suits were pending, no execution or attachments had been levied, and no stay had been issued on the filing of the petition.

Where abuse does, in fact, occur, means are now available to meet it. The court can act promptly upon a claim of premature filing. An order was entered upon the objections to each of appellant's petitions within sixty days. That time can be materially shortened if there is reason to believe that the process of the court is being abused. Moreover, a creditor faced with a stay can move immediately to vacate the stay under section 29(a) whenever the debtor has been granted a discharge within the six-year period. Chopnick v. Tokatyan, 128 F.2d at 522.

The judgment is reversed.