**In the Matter of LINCOLN PLAZA TOWERS ASSOCIATES, Debtors.**

**Bankruptcy No. 80 B 10085.**

United States Bankruptcy Court,
S. D. New York.

Oct. 24, 1980.

Zalkin, Rodin & Goodman, New York City, for Jamaica Sav. Bank; Henry L. Goodman, Richard A. Gerard, New York City, of counsel; Larry D. Henin, New York City, on the brief.

Levin & Weintraub, New York City, for debtor; Michael J. Crames, Myron Trepper, Barry N. Seidel, New York City, of counsel.

## OPINION

JOEL LEWITTES, Bankruptcy Judge.

### A

*Factual and Procedural Background*

Jamaica Savings Bank ("Jamaica") moves to dismiss this Chapter 11 case commenced under the applicable provisions of the 1978 Bankruptcy Reform Act ("1978 Code")[1] by Lincoln Plaza Towers Associates ("debtor"). These adversaries, no strangers to each other, or to this Court, are now engaged in their third court contest; Jamaica having prevailed in the two previous tilts.[2]

The material facts underlying the present motion are not in dispute. Jamaica, a member of the Federal Home Loan Bank of New York, holds a consolidated mortgage on the debtor's primary asset, a rental apartment building together with a ground lease of the land located at 44 West 62nd Street, New York City. In 1975, after the debtor defaulted on the mortgage, Jamaica

---

1. 11 U.S.C. § 1101 *et seq.* (1978).

2. See *Jamaica Savings Bank v. Lincoln Plaza and Lincoln Plaza Towers Associates*, 181 N.Y. L.J. 13 (Sup.Ct. N.Y.Co.1978) (unreported), *aff'd* 73 A.D.2d 517, 422 N.Y.S.2d 892 (1st Dept. 1979), *leave to appeal denied*, 49 N.Y.2d 703, 426 N.Y.S.2d ——, 403 N.E.2d 459 (1980); and *In re Lincoln Plaza Towers Associates*, 1 B.R. 467 (S.D.N.Y.1979) (Bankruptcy Court).

commenced a foreclosure action in the New York State Supreme Court. On December 8, 1978, Jamaica obtained a judgment in excess of $8 million and a judgment of foreclosure and sale was entered. The debtor appealed that order, but was unsuccessful.

On January 10, 1979, the day after its application for a stay pending appeal was unanimously denied by the State Appellate Division, the debtor filed a petition, in this Court, pursuant to Chapter XII of the 1898 Act. Jamaica retorted by moving to dismiss the bankruptcy case. Thereafter, and before a determination on Jamaica's dismissal motion, the debtor amended its Chapter XII plan. Jamaica objected to confirmation of that plan on substantially the same grounds as its motion to dismiss. Lengthy hearings on confirmation were held, but before resolution of these contested matters. Bankruptcy Judge Lesser, to whom that case had been originally referred, resigned. Subsequently, the case was re-referred to me, and in an opinion dated December 13, 1979,[3] I held that the debtor's amended plan violated the relevant provisions of § 517[4] of the 1898 Act and granted Jamaica's motion to dismiss. Almost immediately following this determination, the debtor, pursuant to Bankruptcy Rule 12–39,[5] sought leave to file another amended plan of arrangement. This belated application was denied.

Subsequent to an order having been entered dismissing the Chapter XII case, "with prejudice", the debtor filed a Notice of Appeal and obtained, from this Court, a stay pending appeal upon condition that the debtor make stated monthly payments[6] to Jamaica. After several in–chambers conferences the debtor, representing that it needed additional time to raise third party funds, was granted a ten–day extension of the time period, specified in the proposed stay order, within which to make its initial monthly payment. As so modified, the stay order was signed. The debtor therefore appeared before the District Court seeking a further modification of the stay provisions but such application was denied by District Judge Kevin T. Duffy. On the day the first monthly payment became due, the debtor unsuccessfully applied to this Court for a week's extension of the stay without payment and for permission to substitute a *supersedeas* bond in lieu of monthly cash payments.

The following morning, at 9:14 A.M., having failed to fulfill the terms of the stay order, the debtor commenced this case under Chapter 11 of the 1978 Code thereby triggering the automatic stay provisions of § 362 of the Code.[7] The list of creditors attached to the Chapter 11 petition is identical to the list of creditors furnished by the debtor in the prior Chapter XII case, except that the two law firms, which had represented the debtor in the Chapter XII case, are now listed in the instant one.

3. *In re Lincoln Plaza Towers Associates, supra,* n. 2.

4. 11 U.S.C. § 917. The portion of § 517 relied upon by this Court provided that the provisions of Chapter XII shall not "be deemed to allow extension or impairment of any secured obligation held by . . . any Federal Home Loan Bank or member thereof." This provision, the second independent clause of § 517, was not retained in the Bankruptcy Reform Act. The first clause, denying to this Court the jurisdiction to hear a Chapter XII case affecting a debtor's creditor holding a mortgage insured under the National Housing Act, Cf. *Monte Vista Lodge v. Guardian Life Ins. Co. of America,* 384 F.2d 126 (9th Cir. 1967), *cert. denied,* 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968), similarly has been omitted in the 1978 Act. However the Reform Act grants limited

protection to such Housing Act mortgages under the stay provisions of that Act. 11 U.S.C. § 362(b)(7) (1978).

5. 421 U.S. 1113, 95 S.Ct. 2754, 44 L.Ed.2d lxxi.

6. The amount of the stipulated monthly payments, as recited in the debtor's brief, page 4, on this motion, is in error.

7. 11 U.S.C. § 362 (1978). At the time of the filing of the debtor's Chapter 11 petition, the debtor had not moved to withdraw its appeal of this Court's order dismissing the 1898 Chapter XII case. The debtor's application for such relief, subsequently made, was granted on June 30, 1980. *In re Lincoln Plaza Tower Associates,* 4 B.R. 826, 23 C.B.C. 100 (S.D.N.Y.1980).

Immediately following the filing of the Chapter 11 petition, an understandably frustrated and outraged Jamaica came before this Court urging dismissal of the Chapter 11 case.[8] This motion is predicated primarily [9] on (1) the alleged preclusive effect of this Court's prior dismissal order and (2) an interpretation of § 403(a) of the 1978 Bankruptcy Act which, if correct, denies applicability of the provisions of that Act to this debtor.

## B

### Discussion

### (a)

### The order of Dismissal

On December 13, 1979 this Court filed an opinion which, as noted earlier, concluded that the debtor's plan impermissibly violated the express provisions of § 517 of the 1898 Bankruptcy Act. Accordingly, since this Court could not make the prerequisite finding for confirmation that "the provisions of this Chapter [XII] have been complied with",[10] the proposed arrangement was necessarily refused. At the direction of the Court, Jamaica settled an order on notice dismissing the case pursuant to § 481 of the 1898 Act [11] and Bankruptcy Rule 12–41(b).[12] The order, as signed, provided that the case be dismissed "with prejudice".[13]

Bankruptcy Rule 12–41(b) provides in relevant part that

"The Court shall enter an order, after hearing on such notice as it may direct dismissing the case, or adjudicating the debtor a bankrupt ..., whichever may be in the best interest of the estate—

.    .    .    .    .

(3) if no plan is confirmed; ...."

Subdivision (d) of this Rule further provides that unless the order specifies to the contrary, a dismissal on any ground other than fraud is without prejudice. The Advisory Committee's note indicates that subsection (d) "gives discretion to the Court to determine whether dismissal should bar future relief under the Act." [14]

Jamaica contends that this Court's dismissal of the debtor's Chapter XII case under the 1898 Act, with prejudice, should operate, as well, to bar the maintenance of the instant reorganization case under Chapter 11 of the 1978 Code. Since "a dismissal with prejudice constitutes an adjudication of the merits of the controversy as fully and completely as if the order had been entered after the trial of the suit",[15] Jamaica argues

8. Jamaica additionally commenced an adversary proceeding to dissolve the automatic stay on the stated grounds enumerated in § 362(d) of the 1978 Act. That action has been held in abeyance pending the outcome of this motion.

9. Two other grounds are asserted by Jamaica on this motion for dismissal: (a) judicial estoppel; and (b) abstention of jurisdiction grounded upon the debtor's alleged bad faith. We find no merit in these contentions.

The doctrine of judicial estoppel precludes a party from assuming inconsistent positions with respect to the same matter. *See e. g. Scarano v. Central Railroad Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953). But we find nothing inconsistent in the legal or factual postures assumed by this debtor.

Without determining the extent of this Court's discretion to abstain under the circumstances present here, it is clear that a dismissal grounded on bad faith may not be had without an evidentiary hearing "adequate" to determine the merits of such allegation. *In re Bolton Hall Nursing Home*, 432 F.Supp. 528, 530 (D.Mass.

1977); *In re Colonial Investment Co.*, 516 F.2d 154, 160 (1st Cir. 1975).

10. 1898 Bankruptcy Act § 472(1), 11 U.S.C. § 872(1).

11. 11 U.S.C. § 881.

12. 421 U.S. 1115, 95 S.Ct. 2686, 44 L.Ed.2d xxxiv.

13. Unlike the Courts *In re Phillip Livingstone Plies*, 4 Bank.Ct.Dec. 575 (D.Cal.1978) (Bankruptcy Court) and *Matter of Tucker*, 18 C.B.C. 728 (D.Conn.1978) (Bankruptcy Court), this Court did not restrain the debtor from filing for any further relief in the bankruptcy court. Under the circumstances present here, it would have been, in my view, improvident to do so. *Compare Matter of Hartford Textile Corp.*, 613 F.2d 388, 390–1 (2d Cir. 1979).

14. 1970 Collier Pamphlet Edition, Part 2 at 711.

15. *Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358, 363 (6th Cir. 1967). "A dismissal

that the principle of res judicata [16] should apply.

## (b)

### Res judicata

■ Res judicata contemplates that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." [17] This judicial doctrine [18] is "not a technical rule, but a rule of fundamental repose for both society and litigants." [19] Moreover, this doctrine "encourages reliance upon judicial decisions, bars vexatious litigation and frees the courts to resolve other disputes." [20] However, because a mechanical application of the rule can, in some instances, work an injustice, traditional notions of justice and equity are properly exercisable by the trial courts in determining whether to apply estoppel principles. [21]

■ Jamaica's argument, in support of its contention that the debtor is barred from continuing this Chapter 11 case, may be constructed as follows: the debtor's attempt to obtain relief from its debts by resort to a Chapter XII case under the 1898 Act was rejected; since res judicata bars subsequent actions between the same parties on all claims which were, or could have been litigated in the prior action, this debtor is precluded now from filing any further petitions [22] for an arrangement with regard to those debts scheduled in the earlier case. But even if we *assume* along with Jamaica that the orthodox principles of res judicata, set forth above, apply to bar the commencement of a second bankruptcy reorganization case following a dismissal of the first, [23] we

with prejudice bars a later suit on the same cause of action." *Lawlor v. National Screen Service*, 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1954). *Cleveland v. Higgins*, 148 F.2d 722 (2d Cir. 1945), *cert. denied* 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428 (1946). See also Fed.R.Civ.P., 41(b).

The debtor has pressed the point that the earlier dismissal grounded on § 517 of the 1898 Act was barred on jurisdictional considerations rather than upon the merits. In our earlier decision, however, we explicitly determined that the second clause of § 517, which gave rise to the dismissal, was not jurisdictional. *In re Lincoln Plaza Towers Associates, supra* at 470. In the context of an arrangement, as distinguished from adversary proceedings and contested matters within the arrangement, it is unclear precisely which issues do reach the "merits" of such case. But "[i]t is a misconception of res judicata to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation." *Angel v. Bullington*, 330 U.S. 183, 190, 67 S.Ct. 657, 661, 91 L.Ed. 832 (1947). *Cf.* Reporters Note, Restatement (Second) of the Law of Judgments § 48 at 42–3 (Tent. Draft No. 1 1973).

**16.** Consistent with the modern usage of the term "res judicata", Jamaica argues that the debtor is precluded from bringing further actions on the "claim" asserted in the prior bankruptcy case. There is no suggestion here that Jamaica seeks to invoke the rule of collateral estoppel which is a rule of issue, rather than claim, preclusion. *Lawlor v. National Screen Service, supra* 349 U.S. at 326, 75 S.Ct. at 867.

**17.** *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), cited in *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). *Cf. Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (collateral estoppel).

**18.** *In re Scientific Control Corp.*, 80 F.R.D. 237, 243 (S.D.N.Y.1978).

**19.** 1B Moore's Federal Practice ′ 0.405[1] at 628 (2d ed. 1974). See also *In re Scientific Control Corp., supra* at 243.

**20.** *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

**21.** *Blonder–Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 333–334, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). See also *Teltronics Services, Inc. v. L. M. Ericsson Telecommunications, Inc.*, 491 F.Supp. 538, 539 (S.D.N.Y.1980).

**22.** The instant dismissal motion, which necessarily addresses itself to the present Chapter 11 petition, belies the significance Jamaica attaches to the fact that the debtor's plan here is virtually identical to that which was rejected in the 1898 case. Clearly, the import of this motion is to bar relief to the debtor even if a substantially different plan is submitted.

**23.** In this connection it is noteworthy, for example, that while "opinions dealing with the effect of the disposition of prior petitions upon the dischargeability of debts often employ the verbiage of *res judicata*, the decisions ultimately rest upon a determination of the meaning of

disagree with Jamaica that such principles *unqualifiedly* apply in the face of a material [24] and intervening legislative change in law.[25] Although, in our view, the doctrine of res judicata is generally presumed to apply, even in the face of an intervening change occasioned by a newly enacted statute,[26] this presumption is *qualified*[27] where the legislative intent of such new enactment either renders the conclusive effect of an earlier judgment inapplicable to a subsequent suit or limits the scope of the earlier judgment.[28]

■ Thus, a statutory change will often have the effect of creating a new cause of action which, quite clearly, could not have been litigated prior to the effective date of the new statute.[29]

Since, in the prior action such newly created rights could not have been adjudicated, a judgment in the earlier proceeding should have no preclusive effect on a subsequent action grounded upon a new statute.[30] But whether or not a statute creates a new cause of action necessarily depends upon the intent of the legislature.[31]

■ Additionally, there are two other distinct and independent bases for qualifying or rejecting the normally strict application of res judicata. First, since, as noted earlier, res judicata is a judicial doctrine rooted in public policy, that doctrine has no application where it is inconsistent with legislative purposes.[32] Second, if in its promulgation of new legislation, the Congress manifests an intent to extend relief even to those who have already had their rights adjudicated under the umbrella of prior legislation, the preclusive effect of res judicata will be abrogated.[33]

Accordingly, it is clear that resolution of the instant dispute critically turns upon the

the [Bankruptcy] Act." *Turner v. Boston*, 393 F.2d 683, 684 (9th Cir. 1968) (emphasis in text), *citing Perlman v. 322 West Seventy–Second Street Co.*, 127 F.2d 716, 717–718 (2d Cir. 1942). *Contra: In re Dunn*, 251 F.Supp. 637, 639–640 (M.D.Ga.1966), *citing e. g.*, 7 Remington on Bankruptcy § 3009 at 62–63 (1955). See also *In re Hardy*, 287 F.Supp. 40, 46–47 (S.D. Ohio 1967).

24. It seems clear that the application of the doctrine of res judicata, where appropriate, would be unaffected by an immaterial and insubstantial intervening change of law. *Westgate–Sun Harbor Co. v. Watson*, 206 F.2d 458, 461 (D.C.Cir.1953).

25. Jamaica forcefully argues that a change in law cannot preclude the application of res judicata. However, most of the cases cited, in support of that contention, involve changes in decisional, rather than statutory law, and must be distinguished on that basis. See 1B Moore's Federal Practice ⸿ 0.415 at 2057 (2d ed. 1974). Another array of cases, relied upon by Jamaica, to sustain what we consider to be their overly broad proposition, involves particular circumstances where there was no legislative intent to create new rights. See discussion *infra*.

26. 1B Moore's Federal Practice ⸿ 0.415 at 2051–2 (2d ed. 1974). *Compare In re Opinion of the Justices*, 89 N.H. 563, 198 A.2d 249, 250 (1938).

27. 1B Moore's Federal Practice ⸿ 0.415, *supra* at 2053.

28. 2 Freeman on Judgments § 713 at 1505 (1925). *Compare Alyeska Pipeline Service Co. v. United States*, 624 F.2d 1005, 1013 (Ct.Cl. 1980).

29. Although the effective date of the 1978 Act was October 1, 1979 (§ 402[a] of the Bankruptcy Reform Act of 1978), indisputably, the provisions of the 1978 Act could not be invoked in a case commenced under the 1898 Act. See § 403(a) of the Bankruptcy Reform Act of 1978; *In re Parr*, 3 B.R. 691, 692 (D.C.E.D.N.Y.1979).

30. *Shung v. Brownell*, 227 F.2d 40, 41 (D.C.Cir. 1955), *aff'd on other grounds*, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956); *Magruder v. Safe Deposit & Trust Co.*, 159 F.2d 913, 914–915 (4th Cir. 1947).

31. 1B Moore's Federal Practice ⸿ 0.415 at 2055 (2d ed. 1974); *United States v. Glimco*, 331 F.Supp. 449, 450 (N.D.Ill.1971), *aff'd without opinion*, 492 F.2d 1245 (7th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974).

32. *Kalb v. Feuerstein*, 308 U.S. 433, 438, 444, 60 S.Ct. 343, 345, 348, 84 L.Ed. 370 (1940); *Denver Building and Construction Trades Council v. N.L.R.B.*, 186 F.2d 326 (D.C.Cir. 1956), *reversed on other grounds*, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1957).

33. *Matias Rivera v. Gardner*, 286 F.Supp. 305, 308 (D.P.R.1968); *In re Herrman*, 102 F. 753 (S.D.N.Y.1900), *aff'd without opinion*, 106 F. 987 (2d Cir. 1904).

manifestation of Congress' intent as revealed in the intervening 1978 Bankruptcy Reform legislation.

### (c)
### The Savings Clause

Although the mandate is clear that, under the circumstances present here, we must seek out the intention of the legislature to determine the effect, if any, of the intervening 1978 Bankruptcy Law, on the prior Chapter XII case, the direction such search leads us is often less than certain. Indeed, the unique congruence of events,[34] related earlier, and giving rise to the present motion, brings to mind Judge Kaufman's apt observation that

" 'Nobody', Learned Hand has reminded us 'is so gifted with foresight that he can divine all possible human events in advance and prescribe the proper rule for each.' The judge who must interpret the often Delphic words chosen by Congress to effectuate its will can do no more than 'try to find out what the government . . . . would have done, if the case before him had been before [it].' " [35]

In our quest to discern the intent of Congress,[36] we are at once enjoined to begin with the words of the statute [37] and to limit ourselves, where possible, to the plain meaning of the language.[38]

Turning to Section 403(a) of the Title IV of the 1978 Bankruptcy Reform Act we observe that it provides as follows:

"A case commenced under the Bankruptcy Act [of 1898], and all matters and proceedings in or relating to any such case, shall be conducted and determined under such [1898] Act as if this [Bankruptcy Reform] Act had not been enacted, and the substantive rights of the parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the [Bankruptcy Reform] Act had not been enacted."

An analysis of this savings clause reveals that this provision contains two separate and distinct predicates.

The first clause directs that 1898 cases, as well as contested matters [39] and adversary

---

34. Under the provisions of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544 (1898), for example Congress specifically demarcated cases under the former Act of 1867 from those to be governed under the 1898 Act. The last section of the 1898 enactment, section 71, provided that "This Act shall go into full force and effect upon its passage: Provided, however, that no petition for voluntary bankruptcy shall be filed within one month of the passage thereof, and no petition for involuntary bankruptcy shall be filed within four months of the passage thereof."

Similarly, the Bankruptcy Act of 1867, c. 176, 14 Stat. 517 (1867) section 50, postponed the filing of petitions thereunder from the date of its enactment, March 2, 1867, to June 1, 1867.

The Bankruptcy Reform Act of 1978, however, does not provide for any postponement of the filing of petitions under it, after its effective date, October 1, 1979.

35. *N.L.R.B. v. St. Luke's Hospital Center*, 551 F.2d 476, 477 (2d Cir. 1976) (footnotes omitted).

36. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1974).

37. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979).

38. "When confronted with a statute which is plain and unambiguous on its face we ordinarily do not look to legislative history as a guide to its meaning." *T.V.A. v. Hill*, 437 U.S. 153, 184 n.29, 98 S.Ct. 2279, 2296, 57 L.Ed.2d 117 (1978). However, "the 'plain meaning' of the statutory language raises no more than a presumption, which may be rebutted as to the true 'statutory meaning' of that language." *United Parcel Service v. United States Postal Service*, 455 F.Supp. 857, 866 (E.D.Pa.1978), *aff'd* 604 F.2d 1370 (3d Cir. 1979). Finally, the plain meaning of a statute is not always to be given its "everyday meaning" *Cf. Bradley v. United States*, 410 U.S. 605, 608, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973) (savings clause in criminal statute); rather, "[t]he law uses familiar legal expressions [which are to be interpreted] in their familiar legal sense." *Cf. Henry v. United States*, 251 U.S. 393, 395, 40 S.Ct. 185, 186, 64 L.Ed. 322 (1920) (vesting of legacy payments within meaning of tax–refunding Act of June 27, 1902).

39. Bankruptcy Rule 914, 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxxviii.

proceedings[40] related thereto, shall be conducted, procedurally, and determined, substantively, under that Act. This clause is clearly designed both to provide guidance in a situation where an 1898 Act case was commenced, but not completed by the effective date of the 1978 Code (October 1, 1979), and to preclude the application of the 1978 Code to such cases.[41] Consistent with this legislative mandate, the Courts have uniformly refused to permit a debtor, who has filed under the provisions of the 1898 Act, to voluntarily discontinue that case in order to take advantage of what the debtor may perceive to be, the greener pastures of the 1978 Code.[42] The first clause, accordingly, does not address itself to the case at bar.

■ The second clause of § 403(a), however is, in our view, dispositive of the instant controversy. It provides that the substantive rights of parties in connection, *inter alia*, with a "case", as that term is used in the first clause, "shall continue" to be governed by the 1898 Act and shall be unaffected by the 1978 enactment. The design of the second clause is evident on its face; it demonstrates Congress' intent to *totally*

sanitize the new code from the old. While the first clause deals with cases not yet closed at the time of the effective date of the 1978 Code, October 1, 1979, the second clause addresses itself to possible collisions–at–law which arise after October 1, 1979 but relate to 1898 Act cases, judicially determined on the merits. Thus, if a case has been (1) commenced under the 1898 Act, and (2) conducted and determined[43] under that law, then the substantive rights of parties in connection with that case, "shall continue" to be governed by the law of the 1898 Act.

■ Among the rights of Jamaica, in connection with the prior Chapter XII case, which survive unaffected by the provisions of the 1978 Code are its rights, under its mortgage, to foreclose upon the debtor's property as well as the right granted to Jamaica under § 517 of the former Bankruptcy Act.[44] Since such "unconditional" and "matured" rights[45] are incident to,[46] or arise from,[47] the Chapter XII case, these rights must be deemed to be "in connection with" the now dismissed Chapter XII case.[48]

---

**40.** Bankruptcy Rule 701 *et seq.*, 411 U.S. 1068, 93 S.Ct. 3170, 37 L.Ed.2d lxvi et seq.

**41.** *Cf. In re Adamo*, 619 F.2d 216 (2d Cir. 1980) (effect of hiatus between repeal of Higher Education Act and effective date of Bankruptcy Reform Act of 1978 on discharge of student loan obligations); *In re Parr*, 3 B.R. 692 (Bkrtcy.E.D.N.Y.1980). This is in direct contradistinction of the 1938 Chandler Act, c. 575, 52 Stat. 883 (1938), which permitted the filing of petitions under the then new Chapters X, XI, and XII in proceedings pending on the effective date of the legislation. See *e. g.* 11 U.S.C. §§ 276, 397 and 526 (repealed 1978).

**42.** *In re Geiger*, 4 B.R. 444 (D.C.W.D.N.Y.1980), *appeal docketed*, No. 80–5030 (2d Cir., July 23, 1980), *appeal argued* on September 23, 1980; *In re Macon Uplands Venture*, 2 B.R. 429 (D.C. M.D.Ga.1979), *aff'd per curiam*, 624 F.2d 26 (5th Cir. 1980); *In re Blue*, 2 C.B.C.2d 404, 4 B.R. 580 (D.Md.1980) (Bankruptcy Court); *Cf. In re Eagson Corp.*, 1 B.R. 777 (Bkrtcy.E.D.Pa. 1980) (Bankruptcy Court) (alternative holding).

**43.** Although "one of the usual meanings of the word 'determine' is: to decide; adjudge; adjudicate on an issue presented; to come to a decision; to perform a judicial act ....", *Gooch Milling & Elevator Co. v. Comm. of*

*Internal Revenue*, 133 F.2d 131, 137 (8th Cir.) (citations omitted), *reversed on other grounds*, 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139 (1943), we understand the term "determine", in the context here, to mean, "to [judicially] fix or settle definitely." *Eastman Kodak Co. v. Richards*, 123 Misc. 83, 86, 204 N.Y.S.2d 246 (Sup.Ct. Monroe Co.1924).

**44.** See n. 4, *ante*.

**45.** *Cf. Bradley v. Richmond School Board*, 416 U.S. 696, 720–721, 94 S.Ct. 2006, 2020–21, 40 L.Ed.2d 476 (1973) (application of provisions in the Education Amendments of 1972 allowing assessment of attorneys fees for legal services rendered prior to enactment).

**46.** *Cf. Robinson v. North Arkansas Printing Co.*, 71 F.Supp. 921, 923 (W.D.Ark.1947) (application of exemption clause in Fair Labor Standards Act of 1938).

**47.** *Cf. American Agricultural Chemical Co. v. Tampa Armature Works*, 315 F.2d 856, 859 (5th Cir. 1963) (interpretation of an indemnity contract).

**48.** *Cf. United States v. American Union Transport, Inc.*, 327 U.S. 437, 441, 66 S.Ct. 644, 646,

While "there is no vested right in an existing statute which will preclude . . . [the legislature] from changing it", where rights have matured or accrued under the repealed statute, such rights will ordinarily be protected.[49] Thus it has been observed that

> "[t]he repeal of a statute renders it thenceforth inoperative, but it does not undo or set aside the consequences of its operation while in force, unless such a result is directed by express language or necessary implication. A status established in a manner which becomes proscribed is not lost by the mere fact of its proscription.

> "even, as here, where no question of vested rights is involved, the prescription is that the repeal of an act does not invalidate the accrued results of its operative tenure. To undo such results by a repeal is to give it retroactivity, and based upon elemental principles of justice a rule of construction avoids that effect if the language of the repeal [as here] does not clearly require it." [50]

■ Since, by the terms of § 403(a) Jamaica's substantive rights may not, in any manner, be modified or affected by the provisions of the 1978 Code,[51] no part of the instant Chapter 11 case can permissibly have any impact on Jamaica's previously accrued right to foreclose upon the debtor's property.

In order to avoid the doomsday effect of this conclusion, the debtor, relying upon the decision in *In re Macon Uplands Venture*,[52] argues that § 403(a) has no application where, as here, there is no 1898 Act case *pending* at the time of the filing of the 1978 Code Chapter 11 petition.[53]

We reject this argument. Not only can the debtor not point to any language in the savings clause supporting such proposition, but we can discern no cogent reason advanced for, or any legislative purpose which would be promoted by such proposed limitation.[54] Indeed, the very language of 403(a), which refers only to cases "commenced" under the 1898 Act amply refutes debtor's argument. Clearly, had Congress intended this meaning the debtor ascribes to the savings clause, the legislature would have employed the word "pending", rather than the term "commenced".[55] Since Jamaica's

---

90 L.Ed. 772 (1946) (scope of coverage of the Shipping Act, 46 U.S.C. § 801); *Cf. In re Electric Power and Light Corp.*, 210 F.2d 585, 590 (2d Cir. 1954) (jurisdiction of Securities and Exchange Commission to determine fees and expenses in a Chapter X case involving the reorganization of a corporation registered under the Public Utility Holding Company Act of 1935).

**49.** *State v. State Board of Education*, 174 Ohio St. 257, 189 N.E.2d 72, 75 (1963).

**50.** *In re Opinion of the Justices*, 89 N.H. 563, 198 A. 249, 250 (1938). See also 82 C.J.S. *Statutes* § 435 at 1010 (1953).

**51.** *See In re Adamo*, 619 F.2d 216, 221 (2d Cir. 1980) where the Court observed that "we consider it [§ 403(a)] persuasive evidence of Congress' desire not to impair the rights of parties to actions commenced under the old Bankruptcy Act." *Compare In re Beckers Motor Transportation Inc.*, 632 F.2d 242 at 244, (3d Cir. 1980).

**52.** 2 B.R. 421 (Bkrtcy.D.Md.1979) (Bankruptcy Court). *Contra In re Macon Uplands Venture*, 2 B.R. 429 (D.C.N.D.Ga.1979), *aff'd per curiam*, 624 F.2d 26 (5th Cir. 1980).

**53.** The debtor additionally advances an argument that the language of the first clause of § 403(a), referring to matters and proceedings "relating" to cases under the 1898 Act, is unavailing to save Jamaica's dismissal once the instant Chapter 11 Code case was filed. Since, in our view, the second clause of § 403(a) is dispositive of the instant motion, we refrain from addressing this argument.

**54.** To be sure, if the debtor's contentions were to be upheld, not only would creditors' rights previously determined, and in a state of repose under the 1898 Act, be impermissibly "washed out", *Compare Fleming v. Mohawk Co.*, 331 U.S. 111, 119, 67 S.Ct. 1129, 1133, 91 L.Ed. 1375 (1947), but such creditors would be inequitably exposed to the provisions of the 1978 Code, relating to their rights, at variance with the provisions defining their rights under the 1898 Act. *See Generally* Levin, *An Introduction to the Trustee's Avoiding Powers*, 53 Am. Bank.L.J. 173 (1979).

**55.** *Compare Banco Nacional de Cuba v. Farr*, 243 F.Supp. 957, 964 (S.D.N.Y.1965), *aff'd* 383 F.2d 166 (2d Cir. 1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968).

It is noteworthy that four earlier versions of the Savings Clause, as the Bankruptcy Reform

rights were indisputably established "in connection with" a case "commenced" under the 1898 Act, the 1978 Reform Act provisions cannot be made applicable to affect those rights. If we were to sustain the debtor's view here, "we would be forced to ignore the ordinary meaning of plain language."[56] This we decline to do.[57]

## C

### Conclusion

In our view, the plain meaning of § 403(a), in the intervening 1978 Reform Act, evidences the intent of the Congress, under the facts present here, to bar the instant Chapter 11 case following dismissal of the prior Chapter XII under the 1898 Act. Accordingly, Jamaica's motion to dismiss this Chapter 11 case is, in all respects granted. The parties are directed to settle an order on five (5) days notice in conformity with the foregoing.

Act proceeded though the Congress, provided, with variant, but insubstantial differences, that "[t]he substantive rights of the parties in connection with any bankruptcy case or proceeding *pending* ... on the effective date of this title shall continue to be governed by prior law ...." See H.R.Rep.No. 31 (Jan. 14, 1975) at 261; H.R.Rep.No. 32 (Jan. 14, 1975) at 283; S.Rep.No. 236 (Jan. 17, 1975) as 257; and H.R.No. 6 (Jan. 4, 1977) at 264–5. (emphasis supplied). The only proposed bill employing the term "commenced", in place of "pending", in the Savings Clause, prior to the final enactment of the Reform Act, was H.R.Rep.No. 7330 (May 23, 1977) at 288–289. None of the available recorded debates prior to the introduction of that bill reveal why the earlier used term, "pending" was changed to "commenced". The legislative history of the Savings Clause, H.R. Rep.No. 595, 95th Cong. 2d Sess. 287–88, 459, reported in [1978] U.S.Code Cong. & Admin. News, pp. 5963, 6244, 6415; S.Rep.No. 989, 95th Cong. 2d Sess. 20, 166–67, reported in [1978] U.S.Code Cong. & Admin.News, pp. 5787, 5806, 5952–53; 1 Collier on Bankruptcy ' 7.03[1] (15th ed. 1979), appears not to be directed to the issue at bar and is similarly not helpful to our inquiry here. However, the insertion by the Congress of the term "a case commenced" in the face of earlier versions of the bill providing for the saving of cases "pending", provides "at least implicit support" for our conclusion here. *Compare Bradley v. Richmond School Board*, 416 U.S. 696, 716, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974). Since resort to legislative history is only justified where the legislation, on its face is "inescapably ambiguous", *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951) (Jackson, J., concurring), which is not the case here, we must rely upon the ordinary meaning of the plain language of § 403(a).

56. *T. V. A. v. Hill*, 437 U.S. 153, 173, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978).

57. Our interpretation of § 403(a) renders it unnecessary to determine the applicability, if any, to the instant motion, of the General Savings Clause set out in 1 U.S.C. § 109. See *Professional & Business Men's Life Insurance Co. v. Bankers Life Co.*, 163 F.Supp. 274, 294–295 (D.Mont.1958).