**In re Segundo PEREZ and Juana Perez, Debtors.**

**Bankruptcy No. 881–82756–20.**

United States Bankruptcy Court, E. D. New York at Westbury.

June 9, 1982.

---

Mark Rosenberg, Patchogue, N. Y., for debtors.

Jerem O'Sullivan, Shoreham, N. Y., for New York State Higher Educ. Services.

Richard McCord, Glen Cove, N. Y., Trustee.

ROBERT JOHN HALL, Bankruptcy Judge.

This matter is before the Court on the objection of the New York State Higher Education Services Corporation ("NYSHESC") to confirmation of the chapter 13 plan proposed by Segundo and Juana Perez ("the debtors") which plan would pay back 25% of the amount due on three educational loans. These educational loans were excepted, under section 523(a)(8), 11 U.S.C. § 523(a)(8) (Supp. IV 1980), from the debtors' previous chapter 7 discharge. The NYSHESC objects to confirmation of the proposed chapter 13 on the basis that the plan does not comply with 11 U.S.C. § 1325(a)(3) which requires the plan to be "proposed in good faith".

## Facts

The debtors filed a chapter 7 petition in April 1980 and received a discharge in September 1980. Under the chapter 7 discharge, the debtors were relieved of all but $8,626 of their unsecured debt. This amount was owed on three educational loans and was excepted from the chapter 7 discharge.[1] Four months after the discharge the debtors commenced an adversary proceeding claiming that repayment of the student loan would cause undue hardship. While the "hardship" proceeding was pending, the debtors' gross income rose from $15,400 to $22,750. This precipitated the withdrawal of the adversary proceeding, and the filing of the chapter 13 plan here under consideration.

The debtors' plan proposes to repay the three educational loan creditors, who are the only creditors, 25% over a three year period. Upon completion of the plan, the debtors will receive a discharge of these debts even though they are nondischargeable under chapter 7.[2]

NYSHESC asserts that it is an impermissible violation of the good faith requirement to propose a chapter 13 plan that affects debts excepted from discharge in a previous chapter 7. The debtors contend that the 25% repayment plan is based on their budget and thus is a good faith attempt to repay such debts.

## Good Faith

To resolve the good faith issue, three questions will have to be addressed. First, it must be determined whether the good faith of this proposed plan can be considered when the plan satisfies the other section 1325 criteria. Then the question becomes what Congress meant when it required that a plan be "proposed in good faith". Finally, once the meaning of good faith is identified the court must determine whether this proposed plan is within that meaning.

The debtors' proposed plan meets the other more objective criteria for confirmation.[3] In light of this fact, the Court takes notice of the strong judicial opposition to the use of the good faith provision to deny confirmation of chapter 13 plans that otherwise meet such criteria. See, e.g., In re McBride, 4 B.R. 389 (Bkrtcy.M.D.Ala. 1980), wherein the court said, "where the

---

1. Debts arising from educational loans are nondischargeable under chapter 7 unless they first become due more than five years prior to the filing or in cases of undue hardship. 11 U.S.C. § 523(a)(8).

2. The only exceptions to a chapter 13 discharge are for family support obligations and long term payments that extend beyond the payment period of the plan. 11 U.S.C. § 1328(a); In re Walsey, 7 B.R. 779 (Bkrtcy.N.D.Ga.1980).

3. 11 U.S.C. § 1325 provides six criteria that must be met before a plan can be confirmed. The two objective or quantifiable requirements are contained in § 1325(a)(4) and (6). Under the "best interests of creditors" test of section 1325(a)(4) a creditor must receive under the proposed chapter 13 plan not less than that creditor would receive if the estate were liquidated under chapter 7. Section 1325(a)(6) requires that the debtor be able to make the payments the plan proposes. In effect these provisions provide the outer limits within which the debtor may operate.

specific requirements of section 1325 are met it is not the prerogative of the bankruptcy court to apply additional tests under the guise of interpreting and defining the good faith requirement." *Id.* at 392.

■ Typically, such criticism is aimed at those decisions which, based on a lack of good faith, refuse confirmation to plans which otherwise satisfy the section 1325 criteria but which propose a *diminimis* repayment percentage.[4] Such situations often arise because varying proposals within a broad range of circumstances, can qualify under the objective criteria of section 1325. For example, the best interest of creditors test will only require a *diminimis* repayment percentage when the debtor's chapter 7 proceeding would be a no asset case. Thus to deny confirmation for lack of good faith and base the denial exclusively on the proposed repayment percentage would be in fact to implicitly repeal the best interests of creditors test. Similarly, to allow the non-dischargeability of a debt in chapter 7 to bar confirmation of a chapter 13 plan for lack of good faith in effect reads the liberal discharge provisions of section 1328(a) out of chapter 13.

■ Moreover, a similar result obtains from the view that a proposed plan may not be denied confirmation for lack of good faith where the plan meets all of the other requirements of chapter 13. That approach writes the good faith provision out of chapter 13 thereby ignoring the rule of construction that calls for a statute to be read so as to give meaning to each provision. Clearly, the good faith provision should not be read in derogation of other provisions of the Code, but neither should other provisions be read so as to remove from consideration factors properly within the good faith inquiry.

■ This approach, in fact, was approved recently by the Seventh Circuit Court of Appeals in a decision interpreting section 1325(a)(3). *In re Rimgale,* 669 F.2d 426 (7th Cir. 1982). There the court stated that it could not endorse "the bankruptcy judge's cursory inquiry into the debtor's good faith in proposing the plan". *Id.* at 427. Moreover, the court warned against both using the good faith provision to add requirements to the statute and against the opposite extreme saying that to argue "that the good faith requirement adds nothing to the other criteria for confirmation, is equally unsupportable." *Id.* at 432. Additionally, it should be noted that even before *Rimgale* it was established in this district (and in others) that the good faith test would have to be satisfied independently of the other criteria for confirmation.[5] Accordingly, both case law and the rules of statutory construction support the view that this proposed plan must meet the good faith requirement of section 1325(a)(3) exclusive of other chapter 13 requirements for confirmation.

The second inquiry is what Congress envisioned when it required that a plan be proposed in good faith. "Good faith" is not defined in the Code or in its legislative history. However, as the Eighth Circuit Court of Appeals recognized in the only other circuit level opinion interpreting section 1325(a)(3), the term good faith is not new to bankruptcy law. *In re Terry,* 630 F.2d 634 (8th Cir. 1980). In *Terry* the court described the traditional meaning of good faith as an inquiry into "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit" of the rehabilitative chapter. *Id.* at 635 (*quoting* 9 *Collier on Bankruptcy* ¶ 9.20 at 319 (14th ed. 1978)). Since *Terry* other courts have recognized that the good

4. *See, e.g., In re Burrell,* 6 B.R. 360, 6 B.C.D. 900 (N.D.Cal.1980); Cyr, The Chapter 13 "Good Faith" Tempest: Analysis and Proposal for Change, 55 Am.Bankr. L.J. 271 (1981).

5. *In re Meltzer,* 11 B.R. 624 (Bkrtcy.E.D.N.Y. 1981); *In re Yee,* 7 B.R. 747 (E.D.N.Y.1980); *In re Hurd,* 4 B.R. 551 (Bkrtcy.W.D.Mich.1980). *See In re Iacovoni,* 2 B.R. 256 (Bkrtcy.D.Utah

1980); *In re Murallo,* 4 B.R. 666 (Bkrtcy.D. Conn.1980); *In re Marlow,* 3 B.R. 305 (Bkrtcy. N.D.Ill.1980); *In re Bloom,* 3 B.R. 467 (Bkrtcy. C.D.Cal.1980); *In re Cole,* 3 B.R. 346 (Bkrtcy.S. D.W.Va.1980); *In re Howard,* 3 B.R. 75 (Bkrtcy.S.D.Cal.1980); *In re Johnson,* 5 B.R. 40 (Bkrtcy.S.D.Ohio 1980).

faith question turns on whether the proposed plan is within the "purpose and spirit" of chapter 13. *In re Rimgale*, 669 F.2d 426 (7th Cir. 1982); *In re Yee*, 7 B.R. 747 (Bkrtcy.E.D.N.Y.1980); *In re Cloutier*, 3 B.R. 584 (Bkrtcy.D.Colo.1980). Thus the question becomes what is the purpose and spirit of chapter 13.

"The purpose and spirit of chapter 13 is rehabilitation and repayment." *In re Kull*, 12 B.R. 654, 658 (S.D.Ga.1981). Congress envisioned the potential for rehabilitation and repayment to be greater under chapter 13 then under chapter 7. As for the repayment to creditors, the House Report states that the "benefit is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy." H.R.Rep.No. 95–595, 95th Cong., 2d Sess., 118 (1978),. *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 6077. Similarly, Congress envisioned additional benefits accruing to the debtor who developed "a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7." *Id.* Those benefits include the protection of the debtor's credit rating and his nonexempt assets. Another benefit mentioned is the fulfillment of the desire of many debtors to avoid the stigma attached to straight bankruptcy. *Id.* The purpose and spirit of chapter 13 is therefore reflected in these goals of rehabilitation and repayment envisioned by Congress. Consequently, factors affecting such goals must be considered in the good faith determination.

As a result of the prior chapter 7 proceeding, these debtors will not realize any of the benefits mentioned above that would accrue to a chapter 13 debtor upon the successful completion of a plan. Clearly, the avoidance of the stigma of chapter 7

is unavailable to these debtors. Moreover, although no provision in the Code prohibits the filing of a chapter 13 petition right after a debtor receives a chapter 7 discharge, the prior proceeding, or more accurately its effect on the debtor's rehabilitation, must be considered under the good faith requirement.

As for the debtors' need for rehabilitation, their income has risen from $15,400 to $22,750 since their chapter 7 discharge. Additionally, the monthly payments the debtors are presently obligated to make do not appear to be significantly greater than the monthly payments proposed in the plan.[6] Accordingly, the plan would not relieve any alleged cash flow problem as much as it would merely reduce the repayment period.

Neither will this plan provide those benefits that Congress expected would inure to chapter 13 creditors. Although the non-dischargeability of a debt outside of chapter 13 should not be considered under the best interests of creditors test, it is a factor relevant to repayment and thus properly considered under good faith. *In re Rimgale*, 669 F.2d 426 (7th Cir. 1982).

Here all of the debts are non-dischargeable in chapter 7. Accordingly, the debtors are not entitled to another chapter 7 discharge for six years. If this were not the situation consideration would have to be given to those creditors whose interests could possibly be served through confirmation of the plan. In such a situation, Judge Radoyevich, in confirming a 26% plan over the objection of a student loan creditor, pointed out that the alternative was liquidation which "would result in the discharge of the other unsecured creditors claims." *In re Lambert*, 10 B.R. 223, 7 B.C.D. 565,

---

**6.** The total monthly amount the debtors are obligated to pay the three educational loan creditors is not stated in the pleadings. However, the NYSHESC recites the monthly amount owed to it as $64 per month., Also stated is the fact that the NYSHESC holds 68% of the student loan debt. The proposed plan shows that the debtors have excess monthly income in the amount of $88. From this excess income the plan proposes to pay $66 per month, to the educational loan creditors. Although it cannot be calculated with certainty, it does not appear as if the payments under the original agreement are so much greater than the debtors' excess income. Additionally, the debtors' excess income is based on net income before any tax refund. Although it appears that their refunds may very well be substantial the debtors have not proposed that they be paid into the plan.

567 (Bkrtcy.E.D.N.Y.1981). Here all the creditors are non-dischargeable student loan creditors ergo there are no creditors whose interests would be served by confirmation of this plan.

 Finally, the debtors have the burden of establishing that the proposed plan meets the criteria for confirmation as set forth in section 1325. *In re Elkind*, 11 B.R. 473, 7 B.C.D. 1019 (Bkrtcy.Colo.1981). That the plan be proposed in good faith is a requirement that must be satisfied under that section. The debtors have offered little or no evidence to convince this Court of the debtors' *bona fides* in proposing this plan. Accordingly, the Court finds that the plan was not proposed to foster rehabilitation and repayment. Consequently, confirmation must be denied.