In re Karen E. MARTINI, Debtor.

Bankruptcy No. 82–30028.

United States Bankruptcy Court,
S.D. New York.

April 12, 1983.

Gilbert Harwood, Gen. Counsel, New York State Higher Educ. Services Corp., Albany, N.Y., for creditor-objectant; Frederick J. Schreyer, Albany, N.Y., of counsel.

Lewis D. Wrobel, Poughkeepsie, N.Y., for debtor.

Jeffrey L. Sapir, Yonkers, N.Y., trustee.

## DECISION ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN BY STUDENT LOAN CREDITOR

JEREMIAH E. BERK, Bankruptcy Judge.

New York State Higher Education Services Corporation (NYSHESC) holding an allowed unsecured claim in the sum of $14,620.20, objects to confirmation of the debtor's Chapter 13 plan alleging lack of "good faith" pursuant to Bankruptcy Code § 1325(a)(3) in that the same student loan debt had been rendered nondischargeable in the debtor's prior liquidation case under the former Bankruptcy Act of 1898 (Act). The debtor's plan proposes to pay the sum of $47.30 monthly for a period of 36 months which, after deduction of anticipated trustee's commissions over the life of the plan, will result in a payment to NYSHESC, the only creditor herein, of 10.48%. Upon the hearings, proof and memoranda of law submitted by NYSHESC and the debtor, the Court finds that the Chapter 13 plan should be confirmed notwithstanding the filing of this Chapter 13 case subsequent to the filing of an Act liquidation case in which the same student loan debt was previously scheduled and rendered nondischargeable by virtue of 20 U.S.C. § 1087–3.[1]

### FINDINGS OF FACT

1. On September 30, 1977 (the same date on which 20 U.S.C. § 1087–3 became effective) the debtor filed a Chapter IV liquidation case under the Act and on November 29, 1977 was granted a discharge from all dischargeable debts therein. Had that liquidation case been commenced one day sooner, as the debtor had apparently intended, the student loan debt which is the subject of this Chapter 13 case would have been discharged therein by operation of law. At no time has the debtor sought to discharge her student loan debt on the ground of "undue hardship" pursuant to 20 U.S.C. § 1087–3, although she was of the opinion that her former attorney had intended to do so in that prior liquidation case.

2. The debtor received a Bachelor of Arts Degree in Economics from Bard College in 1974. Thereafter she attended the State University of New York at Binghamton where she obtained the degree of Master of Arts in Economics in the Spring of 1977. Upon completing her post-graduate education, the debtor apparently discovered her true calling in the arts and since that time has been employed by a local ballet company. It does not appear that the debtor ever made any serious effort to obtain employment in her field of matriculation, and since receiving her M.A. degree has not been employed in any capacity that would utilize her college and post-graduate training in economics.

3. The debtor received New York State guaranteed student loans for each year she attended college and graduate school. She has never made any payment on the student loan indebtedness. In August, 1980, NYSHESC obtained a New York State Court judgment against her for the balance due on the then-nondischargeable debt.

---

1. **§ 1087–3. Five-year nondischargeability of certain loan debts; effective date.**

(a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of the five year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents.

(b) Subsection (a) of this section shall be effective with respect to any proceeding begun under the Bankruptcy Act on or after September 30, 1977.

4. On January 19, 1982, the debtor filed the within Chapter 13 case scheduling the same student loan debt. The debtor's plan proposes to pay the sum of $47.30 monthly for a period of 36 months which, after deduction of the Chapter 13 trustee's commissions, would result in a total payment to NYSHESC over the life of the plan of 10.48%.

5. The debtor is a young woman residing with her mother at Fishkill, New York. She has been employed for the last seven years by Fantasia Ballet, Inc. as executive director and a ballet teacher. Her monthly take-home pay is $356.47. The debtor contributes the sum of $43 per month to her mother for living and household expenses. The debtor's budget does not seem extraordinary and shows an excess of estimated future monthly income over estimated future monthly expenses of $13.97 after payment of the $47.30 under the proposed plan.

6. The plan satisfies the confirmation standards of Bankruptcy Code § 1325(a)(1), (2), (4), (5) (there are no secured claims), and (6). The Chapter 13 trustee recommends confirmation.

## DISCUSSION

NYSHESC argues that the debtor's Chapter 13 plan amounts to nothing more than a "supplement" to her prior liquidation case, filed for the sole purpose of discharging under § 1328(a) of the Code a debt previously rendered nondischargeable under the Act. By proposing what it considers to be nominal payments, it deems her plan violative of the "good faith" confirmation standard of § 1325(a)(3). NYSHESC further contends that the debtor never intended to repay her student loan obligation and now hopes to use the broad Chapter 13 discharge to avoid repayment.

---

**2.** *See generally In re Scher,* 12 B.R. 258, 280–83, 7 BCD 979, 994–96, 4 CBC 2d 784, 813–17 (Bkrtcy.S.D.N.Y.1981), and cases cited therein.

**3.** § 1325(a)(4) provides that the court shall confirm a Chapter 13 plan if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the

---

NYSHESC's argument is based on the underlying premise that Congress, in enacting Chapter 13, intended it to be used as a vehicle for the repayment of debts. According to its reasoning, Chapter 13 plans providing for *de minimus* or nominal payments to unsecured creditors do not, as a matter of law, meet the good faith confirmation standard of § 1325(a)(3) particularly where, as here, the debt sought to be discharged was rendered nondischargeable in a prior liquidation case.

### I. GOOD FAITH UNDER CODE § 1325(a)(3)

Since the effective date of the Code there have been a number of decisions construing the requirement that "the plan has been proposed in good faith and not by any means forbidden by law." Bankruptcy court judges have debated whether a Chapter 13 plan must provide "meaningful" or "substantial" payment to unsecured creditors [2] and, whether the Chapter 13 confirmation requirements contain a minimum-payment standard other than that set forth in § 1325(a)(4).[3] Recent decisions from the Courts of Appeals for the 4th, 7th, 8th, 9th and District of Columbia Circuits [4] have uniformly held that "good faith" under § 1325(a)(3) requires no *per se* minimum payment to unsecured creditors and that the scope of the "good faith" inquiry must be determined on a case-by-case basis.

In *Deans v. O'Donnell,* 692 F.2d 968, 970 (4th Cir.1982), the Court stated: "We conclude that the plain language of the statute precludes importation of a *per se* rule of substantial repayment into the 'good faith' requirement in every case." Further, while a comprehensive definition of "good faith" is not possible, the inquiry might include such additional factors as:

estate of the debtor were liquidated under Chapter 7 of this title on such date."

---

**4.** *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982); *In re Rimgale,* 669 F.2d 426 (7th Cir. 1982); *In re Estus,* 695 F.2d 311 (8th Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1982); *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir.1982).

[T]he debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. *Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstances must be examined on a case by case basis in order fairly to apply the statute as now written.* (emphasis added)

*Id.* at 972.

In *Barnes v. Whelan,* 689 F.2d 193, 200 (D.C.Cir.1982), the Court held that § 1325(a)(3) does not require any particular level of repayment. "It seems inappropriate for courts to create a 'meaningful payment' standard by interpretation and inference where Congress has failed to do so explicitly.... [We] adhere to the traditional meaning of 'good faith' as honesty of intention."

Similarly, *In re Goeb,* 675 F.2d 1386 (9th Cir.1981), held that a plan proposing to pay 1% to unsecured creditors did not, solely by virtue of the amount of the proposed payment, violate the "good faith" confirmation standard.

"[W]e decline to impose a substantial-repayment requirement because (1) it is contrary to the language of the statute, (2) whether it would best further the purposes of the Bankruptcy Code is uncertain, and (3) Congress is aware of the perceived deficiency in § 1325(a).

\* \* \* \* \* \*

Given the nature of bankruptcy courts and the absence of congressional intent to specially define "good faith", we believe

that the proper inquiry is whether the Goebs acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in the light of *all* militating factors. (footnote omitted)

*Id.* at 1389, 1390.

On the other hand, *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982), while eschewing a *per se* minimum repayment standard, stated that although "the conduct comprehended under the rubric 'good faith' will have to be defined on a case-by-case basis as the courts encounter various problems in the administration of Chapter 13's provisions," the courts must treat the issue of substantiality of payment as an element of good faith. The Court, quoting from *In re Burrell,* 6 B.R. 360, 366, 6 BCD 900, 904, 2 CBC 2d 1019, 1026 (N.D.Cal.1980), *rev'q* 2 B.R. 650, 5 BCD 1321, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,382 (Bkrtcy.N.D.Cal.1980), stated: "Unless the courts have discretion to consider such factors [substantiality of payment and best efforts of the debtor], the danger exists that Chapter 13 plans could become shams that would emasculate the safeguards the Congress has included in Chapter 7 to prevent debtor abuse of the bankruptcy laws."[5] *In re Rimgale, supra,* 669 F.2d at 432. Similarly, *In re Estus,* 695 F.2d 311, 317 (8th Cir.1982) held that while Chapter 13 plans offering nominal payments should not, in every instance, be denied confirmation, "an important factor the courts must weigh in their analysis [of good faith] is the percentage of payment to unsecured creditors which the plan proposes."

---

**5.** On remand from the District Court the Bankruptcy Court in *Burrell* again refused to confirm the debtor's plan on the ground that the proposed 15% plan did not provide substantial payments to unsecured creditors. The debtor appealed once again. The District Court, 25 B.R. 717, 8 BCD 1127 (N.D.Cal.1982), again reversed, instructing the Bankruptcy Court to confirm the debtor's plan. The second District

Court opinion, however, varied from its earlier opinion in that it did not deem the "good faith" inquiry under § 1325(a)(3) as entailing an examination of the amount of proposed payment to unsecured creditors. Accordingly, the language in the District Court's earlier opinion that the amount of proposed payment is a factor in determining "good faith" (favorably quoted in *Rimgale*) must be read in this light.

It is evident that a general definition of "good faith" as contained in § 1325(a)(3) cannot be set forth by the courts with specificity.[6] The same holds true with respect to the adjectives "meaningful" and "substantial" when used to evaluate the size of the payments under the plan. This Court is of the opinion that the amount of the periodic payments into the plan (or the percentage dividend resulting therefrom for unsecured creditors) may not *in itself* preclude a finding that the plan has been filed in "good faith." However, the amount of the proposed payment should be examined as one of many elements of the "good faith" inquiry in the context of the circumstances unique to each debtor in order to determine whether a given plan abuses the liberal discharge provisions of § 1328(a). In addition, the nature of the debt sought to be discharged under the plan and the circumstances under which it was incurred should play a role in the "good faith" inquiry.[7]

In the instant case, NYSHESC contends that Congress never intended to allow a debtor to first receive a discharge in a liquidation case and then to file a Chapter 13 case for the purpose of "cleaning up" debts that were not discharged in the earlier case.[8] Such a practice, under which the debtor avails herself of "two bites of the apple," is according to NYSHESC, violative of the "good faith" confirmation standard of § 1325(a)(3) since it fosters debt avoidance rather than rehabilitation. NYSHESC relies on *In re Perez*, 20 B.R. 879, [1981–1982 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 68,733 (Bkrtcy.E.D.N.Y.1982), believing the fact pattern therein substantially analogous to that of the instant case. There, the debtors filed a petition under Chapter 13 in August, 1981. Eleven months earlier the debtors received a discharge under Chapter 7. In the liquidation case, the debtors discharged all of their unsecured debt except for $8,026 in student loans excepted from discharge under Code § 523(a)(8). Four months after receiving the discharge they commenced a proceeding under § 523(a)(8)(B) alleging "undue hardship" in repaying the student loans. During the pendency of that proceeding their income rose substantially. As a result, the "undue hardship" attempt at dischargeability was withdrawn. In its place, they filed for relief under Chapter 13 wherein they proposed payment of 25% to the student loan creditor over 36 months. The Court, noting that the nondischargeability of a debt in Chapter 7 does not in itself preclude a discharge under § 1328(a), nonetheless denied confirmation under § 1325(a)(3). Its "good faith" inquiry focused on whether the "purpose and spirit" of Chapter 13, i.e., rehabilitation and repayment, were satisfied.

In this Court's view, *Perez* is not analogous. There, the precipitating factor in the debtors' filing for relief under Chapter 13 appears to have been a rise in income from $15,400 to $22,750. In addition, they were ineligible under Code § 727(a)(8) to receive a second discharge under Chapter 7 until 1986.[9] Here, the debtor's Chapter 13 case was filed more than four years after receiving her discharge under the Act. Further, the debtor points out that rather than volunteering some payment under Chapter 13, on or after September 30, 1983[10] she could

6. See generally In re Victory Construction Co., Inc., 9 B.R. 549, 7 BCD 257, 3 CBC 2d 655 (Bkrtcy.C.D.Cal.1981), for a thorough examination of the meaning of "good faith" under the former Bankruptcy Act.

7. See Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427 (6th Cir.1982); In re Yavarkovsky, 23 B.R. 756, 9 BCD 1160 (S.D.N.Y.1982); In re Sotter, 28 B.R. 201 (Bkrtcy.S.D.N.Y. 1983).

8. See, e.g., In re Troutman, 11 B.R. 108, 7 BCD 947, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 68,030 (Bkrtcy.E.D.N.Y.1981); In re

Diego, 6 B.R. 468, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,710 (Bkrtcy.N.D.Cal. 1980).

9. Under § 727(a)(8) a debtor may not receive a discharge in a case filed less than six years after the filing date of a prior case in which the debtor received a discharge. In Perez, the debtors received a discharge in a case filed in April, 1980.

10. See n. 9 supra. The debtor herein received a discharge in a prior case filed on Sept. 30, 1977.

file a liquidation case under Chapter 7 and likely discharge the student loan debt pursuant to § 523(a)(8)(A) [11] without making any payment whatsoever, it appearing by that time this debt would have first become due more than five years before the date of the filing of that petition. Although the proposed payment is small in relation to the amount of her indebtedness, in view of her limited income and the absence of any indication that it will increase in the future (as contrasted with *Perez*), this Court considers the debtor's plan a meaningful effort at repayment. In this light, the facts here are clearly distinguishable from those in *Perez,* and accordingly it is not dispositive.

 The instant case bears a closer resemblance to *In re Tauscher,* 26 B.R. 99, 9 BCD 1425, Bankr.L.Rep. (CCH) ¶ 69,013 (Bkrtcy.E.D.Wis.1982). There, after receiving a discharge in a Chapter 7 case filed two years earlier, the debtor sought confirmation of a Chapter 13 plan proposing 7½% payment to two creditors whose claims had been excepted from discharge in the debtor's prior Chapter 7 case. Over the objection of a creditor holding a claim previously determined to be nondischargeable under Code § 523(a)(7), the Court confirmed the debtor's plan. While noting that the successive filings and the offer of nominal payments on claims that were found to be nondischargeable in a prior case were factors to be considered in the "good faith" inquiry under § 1325(a)(3), that Court was satisfied that the debtor was not attempting to abuse or manipulate the rehabilitative provisions, purposes or spirit of Chapter 13 and accordingly the plan was in "good faith." Similarly, this Court is satisfied that this plan has been proposed in good faith.

## II. THE EFFECT OF A PRIOR DETERMINATION OF NONDISCHARGEABILITY

NYSHESC contends that a Chapter 13 plan designed to discharge debts rendered nondischargeable in a prior liquidation case is not confirmable since it would render nugatory a determination of nondischargeability in the prior case.

Code § 1328(a) [12] governs the discharge of a debtor who successfully completes payment under the plan. Only long-term debts provided for in the plan as defined in § 1322(b)(5), and alimony, maintenance and child support obligations as defined in § 523(a)(5), are excepted from this broad and generous discharge.

A determination of nondischargeability under § 523 in a prior Code liquidation case is ordinarily not a statutory impediment to the subsequent discharge of the same debt under § 1328(a). *See, e.q., In re Tauscher, supra.* However, the determination of nondischargeability in a prior Act liquidation case has, in this District, been held to preclude a subsequent discharge of the same debt in a Code case. *In re Hochdorf,* 25 B.R. 207, 9 BCD 1165 (Bkrtcy.S.D.N.Y. 1982), aff'd No. 82 Civ. 3445 (JMC) (S.D. N.Y. January 27, 1983). There, a creditor holding a claim adjudged to be nondischargeable in the debtor's prior liquidation case under the Act objected to confirmation of the debtor's Code Chapter 13 plan, which proposed to pay 9½% to unsecured creditors, on the ground that the final judgment of nondischargeability in the Act case precluded a discharge of the debt under § 1328(a) absent full payment and, accordingly, such a plan could not be confirmed. The Bankruptcy Court sustained the creditor's objection under the "savings clause" of § 403(a)

11. Under § 523(a)(8)(A) a discharge under Chapter 7 does not discharge a government insured or guaranteed student loan *unless* "such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition." The debtor herein ceased to be a full-time student in the Spring of 1977.

The court is unaware of the date on which the "applicable suspension period" expired.

12. A debtor who has not completed payments under his plan may, under § 1328(b), be granted a "hardship" discharge under § 1328(c) which, *inter alia,* does not discharge debts excepted from discharge under § 523(a).

of Title IV of the Bankruptcy Reform Act of 1978.[13]

Under the authority of its earlier interpretation of § 403(a) in *In re Lincoln Plaza Towers Associates*, 6 B.R. 808, 6 BCD 1233, 3 CBC 2d 153, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,682 (Bkrtcy.S.D.N.Y.1980),[14] the Bankruptcy Court in *Hochdorf, supra*, 25 B.R. at 209, stated that by virtue of § 403(a) "the judgment of non-dischargeability obtained under the former Act ... is an unconditional and matured right incident to, and arising from, the old Act case. Accordingly, its non-dischargeability is *forever* governed by the provisions of the former Bankruptcy Act." (emphasis added)

In an apparently analogous situation, *In re Koerperich*, 5 B.R. 752, 6 BCD 970, 2 CBC 2d 1284 (Bkrtcy.D.Neb.1980) reached a contrary result. There, a creditor holding a claim determined by default judgment to be nondischargeable in the prior Act case similarly urged that under § 403(a) the dischargeability of that debt should continue to be construed under the Act and, accordingly, could not be discharged under the debtor's Code Chapter 13 plan. The Court stated:

> If the default judgment were set aside on appeal and trial were had, the determination of the dischargeability of the debt in that proceeding would certainly be a matter related to a pre-Code case. However, this plan has been filed pursuant to an entirely separate proceeding commenced under the new Code, and the new law applies even though the case involves a debt determined to be nondischargeable under the old Act.

*Id.* at 754.

*See also In re Pike*, 14 B.R. 241, 243 (Bkrtcy.W.D.Ky.1981); *In re Scott*, 7 B.R. 692, 694, 3 CBC 2d 417, 419, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,730 at 78,328 (Bkrtcy.E.D.Pa.1980).

In *In re Dole*, 7 B.R. 986, 7 BCD 92, 3 CBC 2d 601 (Bkrtcy.D.Idaho 1981), a creditor holding a claim previously scheduled *in* the debtor's Act liquidation case wherein the discharge was revoked pursuant to Act § 15(3), argued that by virtue of § 403(a) the same debt was nondischargeable in the debtor's subsequent Chapter 13 case. In refusing to accept such a construction, the Court stated:

> This savings clause [§ 403(a)] relates only to a case under the old Act as distinguished by a case under the new Code.... To read it [otherwise,] ... one would have to say that it in effect amended Section 17 of the Bankruptcy Act ... to say that a failure to obtain a discharge of the debts in a proceeding under the Act shall not be released by a discharge granted in any other subsequent proceeding under this Act or *any future bankruptcy legislation*. I do not believe such a construction can be placed on the savings clause.

*Id.* at 988.

Similarly, *In re Regency Woods Apartments, Ltd.*, 10 B.R. 721, 723, 4 CBC 2d 550, 552–3 (Bkrtcy.M.D.Ga.1981) stated:

> While the first clause deals with cases not yet closed at the time of the effective date of the 1978 Code, October 1, 1979, the second clause addresses itself to possible collisions-at-law which arise after October 1, 1979 but relate to 1898 Act cases, *judicially determined on the merits.* Thus if a case has been (1) commenced under the 1898 Act, and (2) conducted and *determined* under that law, then the substantive rights of parties in connection with that case, "shall continue" to be governed by the law of the 1898 Act. (emphasis added; footnote omitted)
> *Id.* at 815.

---

13. § 403(a) of Title IV of the Bankruptcy Reform Act, P.L. 95–598, provides:

A case commenced under the Bankruptcy Act [of 1898], and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this [Bankruptcy Reform] Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the [Bankruptcy Reform] Act had not been enacted.

14. *Lincoln Plaza* construed § 403(a) as containing two distinct clauses:

[§ 403(a)] prohibits the application of substantive rights in the new Code to cases pending under the Act. The substantive rights refers only to pending cases and would have no application if there is no case pending under the Act. This is so because the words "shall continue" refers to "such cases," "commenced under the Act." The substantive rights could not "continue to be governed" by the Act unless there was a case to "continue" under the Act that had already "commenced" under the Act. If a case has been terminated, there is nothing to "continue," and thus § 403(a) has application only to pending cases because it is only a pending case that can "continue." It, therefore, follows that § 403(a) can have no operative application except to cases commenced and *pending* under the Act.

The District Court in *Hochdorf, supra,* slip op. at 5–6 n. 4, expressly adopted the construction of § 403(a) as set forth in *In re Lincoln Plaza Towers Associates, supra,* and rejected the approach of *In re Regency Woods Apartments, Ltd., supra.* Accordingly, this Court is constrained to accept the view that where there has been a *judicial determination*[15] of nondischargeability under the Act, the same debt may not be discharged in a subsequent Code case. Here, however, the student loan was rendered nondischargeable by statute, 20 U.S.C. § 1087–3. By virtue of Code § 523(b),[16] a debt rendered nondischargeable in a prior Act case under 20 U.S.C. § 1087–3 is specifically made dischargeable in a subsequent Code case, provided the debt is not otherwise excepted from discharge under § 523(a). *See, e.g., In re Bonder,* 3 B.R. 623, 624, 6 BCD 257, 258 (Bkrtcy.

E.D.N.Y.1980) (debt excepted from discharge under Act § 17(a)(3) held dischargeable in subsequent Code case); *see also In re Jordan,* 21 B.R. 318, 322, 6 CBC 2d 1222, 1228 (Bkrtcy.E.D.N.Y.1982).

As a canon of statutory construction, general language in a statute, although broad enough to include a particular matter, will not be held to apply to it if specifically dealt with in another part of the same statute. *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704, 708 (1932); *see generally* 2A Sands, *Sutherland Statutory Construction* § 51.05 (4th ed. 1973). Insofar as § 403(a) may be construed as deeming a determination of nondischargeability of a debt in an Act case to preclude the subsequent discharge of the same debt in a Code Chapter 13 case, § 523(b) operates as a specific exception to that general rule. Indeed, the Bankruptcy Court in *Hochdorf, supra,* 25 B.R. at 208 n. 6, termed § 523(b) a statutory exception to the finality of nondischargeable judgments.

■ Accordingly, the fact that the debt owed to NYSHESC was excepted from discharge under 20 U.S.C. § 1087–3 in the debtor's prior Act case is not an impediment to either the confirmation of her proposed Chapter 13 plan or, ultimately, the discharge of the student loan debt upon consummation of the plan.

### CONCLUSION

NYSHESC, the objectant herein, has offered no evidence to establish that the debtor's proposed plan abuses the provisions of Chapter 13 or is not proposed in "good faith." The fact that the debtor could opt for relief under Chapter 7 in approximately

---

**15.** *See In re Lincoln Plaza Towers Associates,* 6 B.R. 808, 815 n. 43, 6 BCD 1233, 1237 n. 43, 3 CBC 2d 153, 160 n. 43, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,682 at 78,199 n. 43 (Bkrtcy.S.D.N.Y.1980).

**16.** Code § 523(b) provides:
(b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, un-

*der section 439A of the Higher Education Act of 1965 (20 U.S.C. 1087–3),* or under section 733(g) of the Public Health Services Act (42 U.S.C. § 294f) in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title. (emphasis added)

six months and likely obtain a discharge therein of the student loan debt without making any payment, evidences a sincere attempt to repay a portion, albeit a relatively small portion, of her student loan obligation.

NYSHESC concedes that the debtor's proposed payments are fair and reasonable in the context of her circumstances. It makes no allegations that she has made misrepresentations in her budget or otherwise attempted to mislead the Court. Its contention that the debtor never intended to repay her student loan debt has not been established. This Court cannot accept such an inference solely on the basis of her failure to tender payments. It is equally plausible that she simply did not have the wherewithal with which to make payments. Based on her financial situation, employment history and prospects, it appears that she was in fact unable to repay this debt.

Accordingly, the objection of NYSHESC is overruled. The debtor's plan will be confirmed. Submit order.