ALVIN B. RUBIN, Circuit Judge:
 

 A debtor who filed a petition for relief under Chapter 13 of the Bankruptcy Code less than one month after receiving a discharge in a previous bankruptcy proceeding conducted under the now-repealed Bankruptcy Act of 1898 seeks discharge of a debt that had been found to be non-dis-chargeable in the prior proceeding. Although no creditors appeared or filed any objections at the confirmation hearing for the debtor’s Chapter 13 plan, the bankruptcy court denied confirmation of the plan on the ground that the debtor’s effort to obtain discharge of the debt showed a lack of the “good faith” required by 11 U.S.C. § 1325(a)(3). The district court affirmed. Relying on the literal provisions of § 1328(a) and finding no affirmative evidence of bad faith, we hold that the prior declaration of non-dischargeability does not
 
 per se
 
 taint the later application and does not therefore prevent discharge of the debt.
 

 I.
 

 William G. Chaffin, the debtor, was convicted in March, 1982 of securities fraud and of the theft of $15,000 from Edward N. Newman, Jr., and began serving a prison term for the offense. Chaffin had been in bankruptcy since 1979, when his creditors had filed an involuntary petition under the provisions of the Bankruptcy Act of 1898. Twelve months after his conviction, Chaffin received a discharge in this bankruptcy proceeding. The discharge, however, exempted the $15,000 unsecured debt owed to Newman because, under § 17a(2) of the Bankruptcy Act, debts owed for money obtained by false pretenses or false representations are non-dischargeable. Nineteen days after receiving the discharge, while Chaffin was still serving his unfinished prison term, he filed another petition in bankruptcy. The second petition was under Chapter 13 of the Bankruptcy Code,
 
 [1]
 
 which had taken effect while the prior proceeding was pending.
 

 
 *1072
 
 Chaffin’s Chapter 13 Statement listed his sole income as $50 per month, which he was receiving as a real estate consultant, and $50 per month from other sources. His Chapter 13 plan proposes to pay $10 per month for 36 months, or a total of $360, to the standing trustee. After the trustee’s fee of ten percent is deducted, Newman will receive approximately two percent of the $15,000 debt previously found non-dischargeable. Upon completion of all payments under the plan, Chaffin would receive a discharge of the Newman debt.
 
 [2]
 

 II.
 

 The threshold issue is whether a debt held non-dischargeable under the Bankruptcy Act of 1898 can ever be discharged in a subsequent bankruptcy proceeding. Title IV, § 403(a) of the Bankruptcy Reform Act of 1978, which enacted the current Bankruptcy Code, contains a “savings clause” providing that “the substantive rights of [the] parties in connection with any such bankruptcy case” commenced under the prior Act “shall continue to be governed by the law applicable to such ease ... as if the [Bankruptcy Code] had not been enacted.”
 
 [3]
 
 The italicized phrase, “in connection with any such bankruptcy case,” has been interpreted in different fashions. Most courts interpret it to mean only that the substantive rights at issue in a continuing bankruptcy case that began under the 1898 Act are not affected by the provisions of the Bankruptcy Code.
 
 [4]
 
 These courts have concluded that rights that arose in a bankruptcy proceeding under the 1898 Act but become involved in a subsequent, entirely new bankruptcy case commenced under the Code are governed by the current Code.
 
 [5]
 

 At least one court, however, has decided that any right created in a case commenced under the 1898 Act is forever governed by that Act, even when that right becomes an issue in a later bankruptcy case otherwise controlled by the Code.
 
 [6]
 
 This was the conclusion reached by the Bankruptcy Court for the Southern District of New York in
 
 In re Hochdorf
 

 [7]
 

 The court reasoned that “[c]learly the judgment of non-discharge-ability obtained under the former Act ... is an unconditional and matured right ... [that] is forever governed by the provisions of the former Bankruptcy Act.”
 
 [8]
 

 While the meaning of the phrase “in connection with any such bankruptcy case” is not pellucid, read in context it seems more likely to refer to rights involved in a continuing bankruptcy case than to rights that first arose in a concluded case. Had Congress intended to fix immutably rights determined under the 1898 Act, the phrases “rights created in any such bankruptcy case” or “rights that arose from any such bankruptcy case” would more clearly have conveyed that meaning.
 
 [9]
 

 This reading of the literal language of § 403 is confirmed by its legislative histo
 
 *1073
 
 ry. Comments in the Congressional Record of September 28, 1978 indicate that Congress intended that all cases commenced under the 1898 Act would be governed both substantively and procedurally by that Act and all cases commenced after the effective date of the Bankruptcy Reform Act would be governed by the Code instead.
 
 [10]
 
 We have found nothing in the legislative history to the contrary.
 

 At least one other provision of the Bankruptcy Code confirms this interpretation. 11 U.S.C. § 523(b) expressly states that a debt excepted from discharge in a prior bankruptcy case pursuant to Bankruptcy Act § 17a(l), 17a(3), or 17a(5) is dis-chargeable in a subsequent bankruptcy case. Were the dischargeability of the debt forever governed by the Bankruptcy Act, § 523(b) would be meaningless.
 
 [11]
 

 We conclude, therefore, that § 403 applies only to rights involved in a continuing bankruptcy case, and that it does not prevent the Bankruptcy Code from affecting rights that arose in a prior case concluded under the 1898 Act.
 

 III.
 

 Section 1325(a)(3) of the Bankruptcy Code provides that the court shall confirm a plan if, in addition to other requirements, “the plan has been proposed in good faith and not by any means forbidden by law.” “Good faith” is not defined in the Code.
 
 [12]
 
 In
 
 Public Finance Corp. v. Freeman,
 

 [13]
 

 however, this court established a “totality of the circumstances” test under which we should consider such factors as the reasonableness of the proposed repayment plan
 
 [14]
 
 and whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code.
 
 [15]
 

 After reviewing Chaffin’s proposed plan, the bankruptcy court purported to apply this test. While the court voiced a “totality of the circumstances” test, however, it did not look to the factual circumstances but in effect found that Chaffin’s effort to obtain the discharge of the previously non-dischargeable debt was by itself sufficient to show bad faith. We apply a
 
 de novo
 
 standard of review to this holding, for, unlike the district court, we find that the question of whether a debtor’s effort to discharge a previously non-dischargeable debt
 
 per se
 
 constitutes bad faith to be a question of law.
 
 [16]
 

 11 U.S.C. § 1328(a), which governs discharge in Chapter 13 proceedings, provides that the court
 
 shall
 
 grant a discharge of all debts provided for by the plan, except those for alimony or child support. Chaf-fin’s plan, which does not call for discharge of an alimony or child support debt, meets this explicit statutory standard.
 

 In
 
 Public Finance
 
 we considered the good-faith requirement in relation to another section of the Code, § 1325(a)(4). That section requires the amount to be paid on each unsecured claim to be “not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7,” but does not specifically require a plan to provide for payment to all unsecured creditors. Because the proposed plan in
 
 Public Finance
 
 met this explicit standard, we held that the debtor’s failure to propose payments to all of the unsecured creditors did not demonstrate an absence of good faith. “[T]he existence of [the] explicit statutory standard [is] sufficient grounds to reject the suggestion that by prescribing the good
 
 *1074
 
 faith requirement Congress implicitly intended a more rigorous standard.”
 
 [17]
 

 The debt from which Chaffin now seeks discharge is not of the kind stated to be non-dischargeable by § 1328(a). Congress could have easily added more exceptions to the list in § 1328(a) had it so intended. Absent some other evidence of lack of good faith, therefore, merely seeking the benefit of § 1328(a) does not stamp the debtor’s application with bad faith. Although the debtor’s motive in invoking Chapter 13 solely to obtain discharge of a previously non-dischargeable debt, as well as the circumstances under which that debt arose, may be factors to consider as part of the totality of the circumstances, they cannot, as a matter of law, suffice to show bad faith.
 

 The “totality of the circumstances” test means what it says: It exacts an examination of all of the facts in order to determine the bona fides of the debtor. The legislative history of proposed amendments to the Bankruptcy Code
 
 [18]
 
 describes some of the factors to be considered:
 

 [Congress intended the] good-faith requirement of [§ 1325(a)(3) ] to bar confirmation of a chapter 13 plan where the debtor either does not intend to effectuate the plan as proposed or where the proposed plan is for a purpose not permitted under title 11. For instance, a debtor is not entitled to the confirmation of any plan the principal purpose of which is to render the debtor incapable of meeting legal obligations for the support and maintenance of a former spouse or dependent child.
 
 [19]
 

 The record contains no evidence that Chaf-fin does not intend to effectuate his plan as proposed. Nor does the plan seek a discharge not allowed under the explicit standard of § 1328(a). Moreover, reviewing the other factors suggested by the court in
 
 Public Finance,
 
 we find no indication in the record that the proposed repayment plan is unreasonable. Chaffin reported a total monthly income of $100, and listed monthly expenses including $10 for food, $5 for clothing, $10 for laundry and cleaning, $25 for books and periodicals, and $40 for alimony, maintenance or support payments. These expenses total $90, leaving $10 per month, which he proposes to pay to the standing trustee under the plan. Given his expenses and low income, the plan does not appear to be an effort to seek a nominal repayment that abuses the spirit of the Bankruptcy Code. Nor does the record contain any evidence of misrepresentation, unfair manipulation, or other inequities.
 
 [20]
 

 Considering the totality of the circumstances, therefore, we see no need to remand the case for a factual determination. The evidence all points in one direction, and we therefore conclude that Chaffin has met the good faith requirement of § 1325(a)(3).
 

 For the above reasons, we REVERSE the decision of the district court and REMAND the case to the bankruptcy court for further proceedings consistent with this opinion.
 

 [1]
 

 . Title 11 U.S.C. §§ 1301 et seq. (1986).
 

 [2]
 

 . 11 U.S.C. § 1328(a) (1986).
 

 [3]
 

 . Title IV, Bankruptcy Reform Act of 1978, § 403(a) (emphasis added). The full text of the provision reads:
 

 A case commenced under the Bankruptcy Act [of 1898], and all matters and proceedings in or relating to any such case, shall be conducted and determined under such [1898] Act as if this [Bankruptcy Reform] Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the [Bankruptcy Reform] Act had not been enacted.
 

 [4]
 

 .
 
 See In re Regency Woods Apartments, Ltd.,
 
 10 B.R. 721, 723 (Bankr.M.D.Ga.1981);
 
 In re Dole,
 
 7 B.R. 986, 988 (Bankr.D.Idaho 1981);
 
 In re Koerperich,
 
 5 B.R. 752, 754 (Bankr.D.Neb.1980).
 

 [5]
 

 .
 
 See In re Pike,
 
 14 B.R. 241, 243 (Bankr.W.D. Ky.1981);
 
 In re Regency Woods Apartments,
 
 10 B.R. at 723;
 
 In re Dole,
 
 7 B.R. at 988;
 
 In re Koerperich,
 
 5 B.R. at 754.
 

 [6]
 

 .
 
 See In re Martini,
 
 28 B.R. 932, 937-39 (Bankr. S.D.N.Y.1983);
 
 In re Hochdorf,
 
 25 B.R. 207, 209 (Bankr.S.D.N.Y.1982);
 
 In re Lincoln Plaza Towers Assocs.,
 
 6 B.R. 808, 814-15 (Bankr.S.D.N.Y. 1980).
 

 [7]
 

 . 25 B.R. 207, 209 (Bankr.S.D.N.Y.1982).
 

 [8]
 

 .
 
 Id. See also In re Martini,
 
 28 B.R. at 939.
 

 [9]
 

 .
 
 Cf. In re Lincoln Plaza Towers Assocs.,
 
 6 B.R. at 815.
 

 [10]
 

 . 124 Cong.Rec. HI 1,087 (daily ed. Sept. 23, 1978) (statement of Rep. Edwards); 1 Collier on Bankruptcy ¶ 7.05[3][b], at 7-15 n. 3 (15th ed. 1987).
 

 [11]
 

 .
 
 Cf. In re Bonder,
 
 3 B.R. 623, 624-25 (Bankr.E.D.N.Y.1980).
 

 [12]
 

 .
 
 Public Finance Corp. v. Freeman,
 
 712 F.2d 219, 221 (5th Cir.1983).
 

 [13]
 

 . 712 F.2d 219, 221 (5th Cir.1983).
 

 [14]
 

 .
 
 Id.
 

 [15]
 

 .
 
 Id.; see also In re Rimgale,
 
 669 F.2d 426, 431 (7th Cir.1982).
 

 [16]
 

 .
 
 Cf. Public Finance, 712
 
 F.2d at 221;
 
 In re Goeb,
 
 675 F.2d 1386, 1390 (9th Cir.1982);
 
 In re Rimgale,
 
 669 F.2d at 431-32;
 
 In re Street,
 
 55 B.R. 763, 764 (9th Cir. BAP 1985).
 

 [17]
 

 .
 
 Public Finance,
 
 712 F.2d at 221.
 

 [18]
 

 . S.Rep. No. 150, 97th Cong., 1st Sess. 18 (1981).
 

 [19]
 

 .
 
 Id.
 

 [20]
 

 .
 
 See In re Goeb,
 
 675 F.2d at 1390;
 
 In re Rimgale,
 
 669 F.2d at 432-33;
 
 In re Street,
 
 55 B.R. at 764.