In Re Allan Curtis EDSON and Antoinette Czarnecki Edson, Debtors.

Allan Curtis EDSON and Antoinette Czarnecki Edson, Plaintiffs,

v.

WISCONSIN HIGHER EDUCATION CORPORATION, Assignee of Higher Education Aids, Defendant.

Bankruptcy No. 85–01475.
Adv. No. 86–0581.

United States Bankruptcy Court, E.D. Wisconsin.

April 22, 1988.

Michelle M. Larson, Milwaukee, Wis., for plaintiffs-debtors.

William H. Olson, Madison, Wis., for defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The following issue is presented on the plaintiffs' motion for summary judgment: Is a debt arising out of student loans which first became due more than five years before the filing of the plaintiffs' bankruptcy petition in the Eastern District of Wisconsin dischargeable, notwithstanding a stipulation entered into by the parties and approved by the bankruptcy court in a previous Nevada bankruptcy case?

The parties have submitted a statement of agreed facts.

On April 26, 1985, the debtors filed a joint petition for relief under Chapter 13 of the Bankruptcy Code in the Eastern District of Wisconsin. Plaintiff, Allan Curtis Edson, is a physician and his wife, Antoinette Czarnecki Edson, is a housewife. On February 23, 1986, the case was converted to a case under Chapter 11. Thereafter, on August 4, 1986, the case was converted to a case under Chapter 7.

In 1978, the plaintiffs filed a voluntary petition in bankruptcy in Nevada under the provisions of the Bankruptcy Act.[1] During the pendency of the Nevada bankruptcy case, on or about March 20, 1979, the plaintiffs and Wisconsin Higher Education Corporation ("WHEC") entered into a stipulation providing for the entry of a judgment of a nondischargeable debt against the plaintiffs and in favor of WHEC for $17,475.80 ("Nevada stipulation"). The Nevada stipulation also required that this debt was to be paid over a 10–year period by monthly installments of $145.75 commencing April 1, 1979.

Sporadic monthly payments were made by the plaintiffs over a period from December, 1979 to March, 1982 and totalled $3,310.71. As of November 15, 1987, there was an outstanding balance due on this debt of $13,591.28.

On October 22, 1986, the plaintiffs commenced this adversary proceeding seeking a determination that their debt was discharged upon the filing of their bankruptcy petition in Wisconsin on April 26, 1985, citing §§ 523(a)(8) and 523(b) as authority.[2] The plaintiffs contend that, by virtue of these provisions, their student loans, having became due more than five years before the Wisconsin bankruptcy petition was filed, are now dischargeable.[3]

WHEC, on the other hand, argues that the position taken by the debtors presents "an apparent clash between § 523(b) and the equity powers of the bankruptcy courts," is "an extreme example of bad faith" by the debtors in failing to abide by the terms of their voluntary stipulation and

---

1. Although the agreed statement of facts refers to the Nevada bankruptcy case as "a chapter 7 case," the Bankruptcy Reform Act of 1978 (Bankruptcy Code) became effective on October 1, 1979. The Nevada bankruptcy case had to have arisen under the predecessor Bankruptcy Act.

2. § 523. *Exceptions to discharge.*
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   . . . . .
   (8) for an educational loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—
   (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
   (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

   . . . . .
   (b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965 (20 U.S.C. 1087–3), or under section 733(g) of the Public Health Service Act (42 U.S.C. 294f) in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

3. Under the agreed statement of facts, the student loans were not due more than five years before the filing of the Nevada bankruptcy case but were due more than five years before the filing of the Wisconsin bankruptcy case.

is "an impermissible manipulation of two federal courts of equal rank." [4]

An analysis of §§ 523(a)(8) and 523(b) leads to the conclusion that, although this obligation was formerly nondischargeable, it became dischargeable when the debtors filed their Wisconsin bankruptcy petition on April 26, 1985. Under § 523(b), certain debts excepted from discharge in a prior case under either the former Bankruptcy Act or the Bankruptcy Code become dischargeable in a subsequent case unless they are, by the terms of § 523(a), nondischargeable in the subsequent case. Among the category of debts that fall within the § 523(b) provision are student loans. 3 *Collier on Bankruptcy* § 523.20 (15th Ed.1987) commenting on the discharge of certain debts, formerly nondischargeable, which become dischargeable because of the expiration of time limitations, states:

> "There is no sound reason why a debtor should be forever barred from having such debt discharged."

Not all obligations excepted from discharge in a bankruptcy case become dischargeable upon the filing of a subsequent bankruptcy case. For instance, nondischargeable obligations involving dishonest dealings with creditors which are nondischargeable in a bankruptcy case remain nondischargeable in a subsequent bankruptcy case. Student loans, however, are treated differently. The Congressional determination to allow student loans to become dischargeable after five years are based upon different policy considerations than other nondischargeable debts which remain nondischargeable in a subsequent bankruptcy case. Congress was concerned that students could obtain loans for college and then shortly after graduation discharge those loans in bankruptcy before they entered the work force and acquired significant assets.

> "The nondischargeability of student loans under bankruptcy proceedings was included because investigations into programs had revealed that a number of students were declaring bankruptcy upon graduation solely for the purpose of discharging their obligation to repay their federally guaranteed loan, thus sticking the taxpayer with the bill for their education. We felt, back in 1976, that this was an abuse of the program and took the necessary steps to correct that loophole."

125 Cong.Rec.H. 2759 (Daily Ed. May 7, 1979) (statement of Rep. Michel).

Accordingly, Congress adopted a bar to discharge for a fixed period of time that would end sufficiently long after the student's studies had terminated, and five years was deemed to be the appropriate period. *In re Nunn*, 788 F.2d 617 (9th Cir.1986). There is nothing in any existing statutes to indicate that the parties, by stipulation and by court order, can circumvent §§ 523(a)(8) and 523(b).

If student loans were intended by Congress to remain nondischargeable in a subsequent bankruptcy case more than five years after they became due, when there was a stipulation and order arising out of a previous bankruptcy case, Congress could have so provided. Congress did precisely that with respect to health education assistant loans (HEAL loans). Congress provided that after the expiration of the 5–year period, HEAL loans could only be discharged upon the bankruptcy court making a finding that the nondischargeability would be unconscionable and that the Secretary of the United States Department of Health and Human Services had not waived certain rights. *Matter of Johnson*, 787 F.2d 1179 (7th Cir.1986). However, there is no similar requirement with respect to the student loans involved in the case at bar.

A closely-related issue was presented in *In re Martini*, 28 B.R. 932 (Bankr.S.D.N.Y. 1983). In that case, the debtor filed a chapter 13 plan in an effort to discharge a student loan which was nondischargeable

---

**4.** Originally, WHEC also raised a separate argument claiming that the Nevada stipulation constituted a forbearance agreement resulting in a suspension of the repayment period thereby requiring a finding that the student loans did not become due more than five years before the filing of their current bankruptcy petition. That argument, however, was withdrawn. *See,* letter dated December 1, 1987 to the court from Attorney William Olson, counsel for WHEC.

in a prior liquidation case under the Bankruptcy Act. The argument was made by the New York State Higher Education Services Corporation that the student loan should remain nondischargeable in the subsequent chapter 13 case by virtue of § 403(a) of Title IV of the Bankruptcy Reform Act of 1978, which states:

"A case commenced under this Bankruptcy Act [of 1898], and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this [Bankruptcy Reform] Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the [Bankruptcy Reform] Act had not been enacted."

The gist of the argument was that, under § 403(a), since the student loan had been rendered nondischargeable in the prior Act case, it should remain nondischargeable. The court in *Martini* rejected that contention, declaring, 28 B.R. at 939:

"As a canon of statutory construction, general language in a statute, although broad enough to include a particular matter, will not be held to apply to it if specifically dealt with in another part of the same statute.... Insofar as § 403(a) may be construed as deeming a determination of nondischargeability of a debt in an Act case to preclude the subsequent discharge of the same debt in a Code Chapter 13 case, § 523(b) operates as a specific exception to that general rule."

§ 523(b) is clear. Even though the bankruptcy court is a court of equity, it can only apply its equitable powers in a manner consistent with the provisions of the Bankruptcy Code. That principle was recently reiterated by Justice Scalia in *Norwest Bank Worthington v. Ahlers,* — U.S. —, —, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (U.S. 1988), as follows:

"... whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."

The bankruptcy court must be careful not to create new substantive rights under the guise of its equity powers. Justice Frankfurter observed:

"A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might widely suggest, construction must eschew interpolation and evisceration."

Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 533 (1947).

WHEC's attempt to interject bad faith on the part of the plaintiffs into this case is, at best, speculative and unsupported by the particular facts. To attempt to look back into the minds of the parties after nine years would be an exercise in futility. What is established by the record is that the debtors, over a period of 27 months, made payments to WHEC totalling $3,310.71. When these payments ceased, WHEC could have attempted to enforce collection by returning to the bankruptcy court in Nevada but chose not to do so. WHEC's argument that the debtors "bought peace for ten years" is therefore unpersuasive under these circumstances.

The plaintiffs' motion for summary judgment is therefore granted, and the obligation of the debtors to WHEC is discharged.